619 F.2d 1292
 22 Fair Empl.Prac.Cas. 1079,
22 Empl. Prac. Dec. P 30,837
Thomas WOMACK, Appellant,
v.
Lee MUNSON, Prosecuting Attorney for the Sixth Judicial
District of Arkansas, Appellee.
 No. 79-1306.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 6, 1979.
Decided April 17, 1980.
Rehearing and Rehearing En Banc Denied May 23, 1980.
 
 Richard L. Mays, Mays & Crutcher, Little Rock, Ark., for appellant.
 Philip K. Lyon, House, Holmes & Jewell, Little Rock, Ark., for appellee; J. Bruce Cross and Hugh L. Brown, Chief, Civil Division, Deputy Pros. Atty., Little Rock, Ark., on brief.
 Before LAY, Chief Judge,* and BRIGHT and McMILLIAN, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 This appeal challenges judgment entered in favor of the defendant in a title VII action that alleged retaliatory discharge from employment.[1] Thomas Womack had worked in various positions since 1966 in the county sheriff's department and the state district prosecutor's office. He was discharged from employment as a deputy sheriff in 1973, and filed a complaint with the Equal Employment Opportunity Commission, (EEOC), protesting the discharge.[2] In February 1975 he was hired as an investigator by the state prosecutor, Lee Munson. In June 1975 Womack filed a class action suit against the sheriff based upon the allegations contained in his EEOC charge. Shortly thereafter Munson questioned Womack about the lawsuit and suspended him; an investigation followed, and Womack was discharged 20 days later.
 
 
 2
 The district court found Womack had made a prima facie case of retaliatory discharge, but that Munson had established an independent, nondiscriminatory ground for the discharge. It dismissed the complaint. We reverse with directions to enter judgment for Womack, and to award back pay from the date of discharge.[3]
 
 
 3
 I. Facts.
 
 
 4
 Womack filed the lawsuit against the sheriff on June 3, 1975. On Thursday morning, June 5, 1975, Munson called Womack into his office to "determine what sort of a lawsuit this was." Munson testified his initial concern was the potential conflict of interest raised by his employee suing a party whom he had the responsibility of defending. According to a June 9 memorandum filed by chief deputy prosecutor Bentley, Womack was told at this June 5 meeting that he had placed the prosecutor's office in an embarrassing position because it would appear the office sanctioned his charges, and there was a further problem because the office was responsible for defending the sheriff. Munson verified these statements on cross-examination by admitting the lawsuit put him in an awkward position, and that retaining Womack on his payroll might give the sheriff and others the impression he sanctioned the charges. At the June 5 meeting, Womack asked if Munson wanted him to withdraw the lawsuit. Munson said he did not want him to, but was concerned with the position the lawsuit put his office in at the particular time. Munson then suggested Womack take a leave of absence with pay and offered to help him find suitable employment.
 
 
 5
 At this initial meeting Womack was questioned about an allegation in the lawsuit concerning abuse of suspects by the sheriff's office, and his knowledge of and involvement in the abuse. He testified at trial that he told Munson that the sheriff's practice was to call in black officers when white officers were interrogating black suspects. He stated he had once been "called in" when a white officer was abusing a black suspect. Munson, Bentley and deputy prosecutor Haynes testified Womack said at the June 5 meeting that he had personally participated in the physical abuse of black prisoners in order to keep his job. Womack denied making the statement. The trial judge credited Munson's testimony that Womack had made this admission on June 5.
 
 
 6
 On the morning of Monday, June 9, Womack told Bentley he did not want to leave and take a job Bentley had suggested to him on June 6. Later that day, Womack was placed on leave of absence and told the matter of mistreatment of black prisoners would be investigated. Deputy prosecutor Crank, who had been put in charge of the investigation, then interrogated him further. Womack refused to give a sworn statement without a lawyer present. In response to Crank's questions, he denied he had said at the June 5 meeting that he had personally been required to brutalize anyone.
 
 
 7
 Crank investigated and failed to find any corroboration for Womack's allegations that black deputy sheriffs had been required to abuse black suspects.[4] Crank orally reported his findings to Munson and Bentley on June 26. Munson determined after consultation with Bentley and others in the office, that Womack should be discharged. Bentley told Womack he was fired on June 26. Both Bentley and Munson testified the main reason for Womack's discharge was his denial that he had told them on June 5 that he had personally abused black suspects. According to Munson, regardless of whether Womack had in fact physically abused suspects or had lied about it, either situation was "untenable" and Womack had to be fired. This was given in the pretrial stipulation as Munson's "business reason" for the discharge, and was Munson's defense theory at trial.
 
 
 8
 Bentley's memorandum to his file, dated June 26, stated Womack's discharge was for: (1) moonlighting as an armed security guard; (2) campaigning for political office; and (3) his admission that he had mistreated blacks while employed as a deputy sheriff. No mention was made of Womack's denial of the admission. Bentley testified he had informed Munson of the first two reasons, but that the principal reason for Womack's discharge was the admission of abuse.[5] Munson testified the real or primary reason was the admission coupled with the subsequent denial.II. Legal Standards.
 
 Section 704(a) of title VII provides:
 
 9
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 
 
 10
 42 U.S.C. § 2000e-3(a).
 
 
 11
 The order and allocation of proof in title VII suits generally, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-1825, 36 L.Ed.2d 668 (1973); Furnco Construction Corp. v. Waters, 438 U.S. 567, 577-78, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978); Board of Trustees v. Sweeney, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam), is also applied in cases alleging retaliation for participation in title VII processes. See Garrett v. Mobil Oil Corp., 531 F.2d 892, 895 (8th Cir. 1976); Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976); Hochstadt v. Worcester Foundation, 425 F.Supp. 318, 324 (D.Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976); B. Schlei, Employment Discrimination Law, ch. 15 at 436 (1976). Section 704(a) requires a plaintiff to show: (1) statutorily protected participation; (2) adverse employment action; and (3) a causal connection between the two. Hochstadt v. Worcester Foundation, 425 F.Supp. at 324; B. Schlei, supra at 417. Once Womack had made out a prima facie case of retaliatory termination, the burden shifted to Munson to articulate a legitimate, nondiscriminatory reason for the dismissal. Miller v. Williams, 590 F.2d 317, 320 (9th Cir. 1979); Hochstadt v. Worcester Foundation, 425 F.Supp. at 324. Munson did not have to prove absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason. Furnco Construction Corp. v. Waters, 438 U.S. at 577-78, 98 S.Ct. at 2949-50, Kirby v. Colony Furniture Co., 613 F.2d 696, at 702 (8th Cir. 1980). If Munson produced evidence of a reason other than retaliation, Womack could still prevail if the evidence showed the proffered justification was in fact a pretext, a cover up for retaliation. Aguirre v. Chula Vista Sanitary Service, 542 F.2d at 781; Hochstadt v. Worcester Foundation, 425 F.Supp. at 324. The overall burden of persuasion remained with Womack.
 
 
 12
 III. Analysis.
 
 
 13
 We hold the district court erred in concluding Munson's reason for discharge was a legitimate and nonretaliatory one. We also hold Womack met his burden of showing he was discharged because of the lawsuit he filed against the sheriff.
 
 
 14
 A. Legitimacy of the Reason for Discharge.
 
 
 15
 We agree with the district court that Womack made out a prima facie case of retaliatory discharge.[6] It is a strong case. The evidence shows that Munson initially called Womack in upon learning of the lawsuit, before Womack had made any admission. At that meeting, Munson told Womack he wanted him to leave because his continued employment in the prosecutor's office was an embarrassment. Within five days of this discussion Womack was suspended; within twenty days he was fired.
 
 
 16
 The district court found Munson established a legitimate, nondiscriminatory reason for the discharge: Womack's admission of physically abusing black suspects and subsequent denial of both the admission and the abuse. We agree that there is substantial evidence to support the finding that the admission and denial occurred, and although the evidence is contradictory, that Munson and his chief deputy considered these as factors in their decision to terminate Womack. We differ with the district court in its legal conclusion that these factors were sufficiently independent from the filing of the complaint to constitute legitimate and nonretaliatory reasons for discharge under section 704(a).
 
 
 17
 Womack alleged in his complaint that the sheriff required black deputies to physically abuse black suspects. Womack's standing to raise that claim stemmed from his prior employment as a black deputy sheriff the crux of his complaint was racial discrimination in his discharge from the sheriff's office. The complaint itself necessarily implies Womack had personal knowledge of such abuse, or at the minimum, that the abuse affected him sufficiently to challenge it. Thus, Womack's admission of personal knowledge of or participation in the abuse varies little from the allegation he made in his complaint. The admission was made in a meeting in which Womack was being interrogated about the allegations in the complaint. In Munson's own words, the allegation and admission were "all wrapped up in one statement." We conclude the admission and denial of abuse by Womack are so inextricably related to the allegation in the complaint that they cannot be considered independently of one another.
 
 
 18
 Access to the EEOC and federal courts by filing charges is clearly conduct protected from employer retaliation by section 704(a). See Emporium Capwell Co. v. Western Addition Community Organization, 420 U.S. 50, 71 n.25, 95 S.Ct. 977, 989 n.25, 43 L.Ed.2d 12 (1975); Pettway v. American Cast Iron Pipe Co., 411 F.2d 998 (5th Cir. 1969). Filing a lawsuit alleging a former employer violated title VII by requiring black employees to abuse black suspects is protected activity.
 
 
 19
 In a closely analogous area, retaliatory discharge of public employees for exercise of First Amendment rights, a strict standard is employed to determine causation. Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); Mt. Healthy City School District v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Even if protected conduct is shown to be a substantial factor in the termination decision, the employer may not be liable if the discharge would have taken place even in the absence of the protected activity. Givhan, 439 U.S. at 416, 99 S.Ct. at 697; Mt. Healthy, 429 U.S. at 285-87, 97 S.Ct. at 575-76.[7]
 
 
 20
 The sole inference the evidence allows here is that Womack's discharge would not have taken place in the absence of the lawsuit he filed against the sheriff. He was initially questioned only because he filed the lawsuit. His admission and denial were responses to employer questions on an allegation he made in the lawsuit: discriminatory, abusive practices by the sheriff's office. They were answers to questions on his personal knowledge of the substance of his allegation. As such, they are virtually inextricable from his protected charge. For purposes of determining the nature and extent of protected activity under section 704(a), they are inseparable from the court complaint that is clearly protected by statute.[8] They therefore share the complaint's protected status, and cannot constitute independent, legitimate reasons for discharge. To hold otherwise would create a facile subterfuge for employer retaliation.
 
 
 21
 B. Pretext.
 
 
 22
 The district court found that the reason given by Munson for Womack's discharge was not pretextual. Assuming arguendo that the reason could be a legitimate basis for discharge, we hold the district court's finding that it was not pretextual is clearly erroneous. Our review of the record leaves us with a firm and definite impression that a mistake was made and that the evidence overwhelmingly established Womack was fired because he filed the lawsuit.
 
 
 23
 The chronological sequence of events does not support Munson's explanation. Womack's controverted admission was made on Thursday, June 5. He was discharged on June 26. His denial of the admission was reported to Bentley and Munson on June 9: after the decision to suspend him had been made and over two weeks before he was discharged.
 
 
 24
 The district court found that Munson's intervening investigation substantiated his testimony that Womack's admission and denial put Munson in an untenable situation and required Womack's discharge. Yet the record shows the investigation did not concern Womack's admission or his denial of personally abusing suspects. Munson testified verification of Womack's admission of personal involvement was not the point of the investigation.[9] Indeed, the investigation could not logically have had any bearing on the decision to fire Womack, since both his admission and subsequent denial were made before the investigation commenced. The alleged grounds for discharge existed regardless of what the investigation revealed. Moreover, the investigation's independent determination of the truth or falsity of Womack's allegation against the sheriff could not legally have been grounds for discharge under section 704(a). The merits of a charge made against an employer is irrelevant to its protected status. Abramson v. University of Hawaii, 594 F.2d 202, 211 (9th Cir. 1979); Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir. 1969). Access is protected; administrative and judicial mechanisms determine the truth, falsity, frivolousness or maliciousness of an EEOC charge or court complaint. Thus, employer retaliation even against those whose charges are unwarranted cannot be sanctioned. Abramson, 594 F.2d at 211.[10]
 
 
 25
 Womack's subsequent attempt to explain his June 5 statement concerning his personal knowledge of abusive practices in the sheriff's office was not pursued, but simply treated as a denial. Crank failed to find any evidence of physical abuse of any suspect. These facts demonstrate that Womack's admission alone was not the reason for his discharge. This perhaps explains why the reason proffered at trial was the admission coupled with the subsequent denial. The difficulty with this defense is shown by the record. Evidence closest to the actual occurrence is a memorandum by chief deputy Bentley, which was dictated for his file on the same day that he informed Womack of his discharge, June 26. It discredits the defense theory that it was not the admission alone, but the admission and subsequent denial that made discharge inevitable. The memorandum lists three reasons Bentley orally gave Womack to explain the discharge. Two were retracted as motivating reasons by Munson under cross-examination; the third was admission of participation in physical abuse of black suspects. Denial of the admission or untrustworthiness because of the denial are not listed. Neither Bentley nor Womack testified the denial was mentioned to Womack as a reason for his discharge, much less the principal reason.
 
 
 26
 Another memorandum was prepared by Bentley for his file on June 9 that summarizes the initial, June 5, meeting with Womack. It substantiates Womack's testimony by stating that Womack was told at the first meeting that he had "placed this office in an embarrassing position because it would appear that we (the prosecutor's office) sanctioned the charges (against the sheriff)." It also says that Womack was told Munson would like him to take a leave of absence until the lawsuit was settled before Womack was questioned as to the veracity of, and his personal knowledge of, the allegations of physical abuse.
 
 
 27
 Munson's expression of anxiety over the lawsuit and desire to have Womack leave is significant, because no adverse action was taken against Womack until after he refused, on June 9, to leave voluntarily. The district court stated at the close of trial that it credited the testimony of defense witness Bentley. However, it apparently failed to consider also Bentley's earlier, written account of the events, which had been admitted in evidence. Bearing in mind the district court's credibility determination, we must nevertheless include these memoranda in our review of the entire record. They show predisposition to have Womack leave and failure on June 26 to record for the file, or mention to Womack, that his denial of his earlier admission was a motivating reason for discharge. This must be considered together with the irrelevancy of the investigation to any permissible or proffered reason for discharge, the timing of events, and testimony by both Munson and Bentley that Womack was otherwise a satisfactory employee. We are left with the firm and definite impression that the admission-denial rationale was a pretext to legitimatize the discharge. The record makes clear the real reason for discharge: Womack's lawsuit against the sheriff.
 
 
 28
 Conclusion.
 
 
 29
 The judgment is reversed and the cause remanded for findings and a determination on Womack's request for back pay, as he no longer requests reinstatement. Absent extraordinary circumstances, back pay is awarded to fashion the most complete relief possible for proscribed discrimination. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); Wells v. Meyer's Bakery, 561 F.2d 1268, 1272 (8th Cir. 1977). Absence of bad faith is not a sufficient reason to deny back pay. Albemarle, 422 U.S. at 422, 95 S.Ct. at 2373. We also note a prevailing plaintiff in a title VII action ordinarily receives attorney fees. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). Plaintiff's counsel is awarded attorney fees on appeal in the sum of $1,500.00.
 
 
 
 *
 The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980
 
 
 [1]
 The action was brought under section 704(a) of title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)
 
 
 [2]
 Womack, a black, charged in the EEOC complaint that his race and his testimony on behalf of the defense in a murder prosecution were the reasons for his termination. He alleged he had refused the sheriff's instructions to bar whites from black operated private clubs, and also alleged discrimination against blacks generally by the sheriff's office
 
 
 [3]
 Womack has had other employment which must be considered in mitigation of his back pay award
 
 
 [4]
 The district court noted this was "not surprising," since most of the persons interviewed appear to have been those who worked or had worked for the accused, the sheriff
 
 
 [5]
 Bentley's written response to an EEOC investigation, dated August 13, 1975, was that Womack was unsuitable because of several shortcomings. He included marginal productivity and poor judgment among these. However, Bentley admitted on cross examination that Womack would not have been fired for unsatisfactory job performance
 
 
 [6]
 The district court found Womack had made out a prima facie case of retaliatory discharge by showing: (1) filing the lawsuit against the sheriff (a protected activity); (2) that Munson was aware of the lawsuit; (3) that Womack was subsequently discharged; and (4) that discharge followed the protected activity so closely as to justify an inference of retaliatory motive
 
 
 [7]
 In cases challenging adverse employment actions as racially discriminatory under section 703(a), 42 U.S.C. § 2000e-2(a), we have held the court must look for the "motivating factor" when the evidence suggests mixed motives. See, e. g., Marshall v. Kirkland, 602 F.2d 1282 (8th Cir. 1979); Clark v. Mann, 562 F.2d 1104, 1116-17 (8th Cir. 1977) (42 U.S.C. § 1983 action). Similarly, the First Circuit has recently held that where motives are mixed, the motive of retaliation for employee opposition to discrimination must be shown to be a "determinative factor" in the discharge decision. Monteiro v. Poole Silver Co., 615 F.2d 4, at 9 (1st Cir. 1980). See also Green v. McDonnell Douglas Corp., 463 F.2d 337, 346 (8th Cir. 1972), rev'd on other grounds, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (protected activity cannot be even partial cause) (Lay, J., concurring). The test in Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) and Mt. Healthy School Dist. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), is stricter than these standards
 
 
 [8]
 See Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir. 1969) (Congress struck balance for employee in case of filing charges)
 
 
 [9]
 Munson testified the investigation was to see if it would be necessary to call a grand jury or bring charges against the sheriff. He also testified Womack would be an unsuitable employee if his admission were true or if the denial were true. Munson's testimony thus undercuts the district court's reliance on the investigation as proof that Munson's stated reason was the principal one and was not a pretext
 
 
 [10]
 In an analogous situation, one claim among four or five colorable ones was held insufficient to deprive the overall EEOC charge of its protected status and allow discharge of the employee who filed it, even if that one claim were later shown to be false or malicious:
 The Employee is not stripped of his protection because he says too much. If he says enough the Employee can suffer no detriment by virtue of having filed charges with EEOC which also contain false or malicious statements. By utilizing EEOC machinery he is exercising a protected right.
 Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir. 1969).