**Donna THEISS, Plaintiff,**

**v.**

**JOHN FABICK TRACTOR COMPANY, Defendant.**

**No. 79–124C(3).**

United States District Court,
E. D. Missouri, E. D.

Jan. 15, 1982.

Michael J. Hoare, St. Louis, Mo., for plaintiff.

Donald J. Meyer, Clayton, Mo., for defendant.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits after trial to the Court. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, claiming that defendant, her former employer, discriminated against her in the terms and conditions of her employment because of her sex and retaliated against her for opposing the violations of Title VII which allegedly oc-

curred as a result of defendant's hiring and promotion practices. After consideration of the pleadings, the testimony and exhibits introduced at trial, the parties' briefs, and the applicable law, the Court makes the following findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52.

## FINDINGS OF FACT

Plaintiff, Donna Theiss, is a female citizen of the State of Missouri residing within the Eastern District of Missouri.

Defendant, John Fabick Tractor Company, is a corporation organized under the laws of the State of Missouri, and is engaged in the business of selling and servicing heavy-duty earthmoving and other heavy construction equipment in Missouri and Illinois. Defendant maintains its principal place of business within the Eastern District of Missouri. Defendant is engaged in an industry affecting commerce and at all times relevant hereto employed at least fifteen employees.

Donna Theiss was employed by defendant for several distinct periods between 1964 and January 8, 1975.

She was employed as a clerk typist in defendant's Inventory Department from 1964 until 1965 when she left to have a child. She returned to the same department and job category in October, 1965 and stayed until 1966 when she left for a short time and returned for a third brief period before leaving in 1967 to raise her family.

After a divorce in 1971, Ms. Theiss returned to defendant's employ on November 8, 1971, and remained until her discharge in January, 1975.

In November, 1971, Ms. Theiss was employed as a clerk typist in defendant's Sales Promotion Department. This department is essentially a support organization for the defendant's sales activities. The Sales Promotion Department contains a print shop.

Ms. Theiss commenced a training program in 1972 for the purpose of acquiring skills necessary to operate and maintain the machines in the print shop. During this informal program, she was trained to operate and maintain the presses and composers and arrange layouts for advertising.

On February 2, 1973, Ms. Theiss was advanced from the position of clerk typist to that of "technician" and received a corresponding increase in pay. She worked full time in defendant's Print Shop. Her employee record reflects an increase from $3.00 to $3.50 per hour on February 2, 1973; an increase from $3.50 to $3.75 per hour on May 1, 1973; and an increase from $3.75 to $4.05 per hour on May 1, 1974.

The Sales Promotion Department was managed by a Manager and an Assistant Manager at all times during the period 1970 through August, 1974. In 1970 the Manager was Red Duncan; Mr. Bill Daley served as Assistant Manager. In September or October of 1973, Mr. Daley left defendant and was replaced by Tom Calza who served as Assistant Manager until July, 1974. Mr. Calza was advanced to the position of Assistant Manager from the Print Shop where he had worked with Ms. Theiss and trained her.

Red Duncan retired as Manager in December, 1973 and was replaced by Harry Hutchinson who was hired into that position from outside the company. Mr. Hutchinson and Mr. Calza served as Manager and Assistant Manager, respectively, until July, 1974 when Mr. Hutchinson left the company and Mr. Calza was appointed manager. Ms. Theiss and Mr. Calza had a pleasant and friendly relationship during his tenure as the department's Assistant Manager and prior thereto when he worked in the Print Shop.

Although Mr. Calza was promoted to the position of Manager of the Sales Promotion Department, he had retained many of his duties pertaining to photo and audio-visual work. Because Ms. Theiss was not experienced in these two fields, Mr. Calza sought to hire someone to relieve him of his photo and audio-visual duties, as he found he could not adequately perform these tasks along with his responsibilities as Department Manager.

During the morning of Friday, September 6, 1974, Mr. Calza advised the recently hired personnel manager, Julianne McMiller, that she was to place an advertisement seeking applicants to take over the photography and audio-visual work in the Sales Promotion Department. Ms. McMiller had begun working for defendant just two days prior to this on September 4, 1974. On September 4 and September 5 she had been introduced to persons in the organization and briefed on her new responsibilities; she had performed no personnel work on those two days.

Pursuant to Mr. Calza's directions, Ms. McMiller placed an advertisement in the Sunday, September 8, 1974, edition of the St. Louis Post-Dispatch; the ad was called in to the paper by noon, Friday, September 6. The ad sought applicants for a "trainee" position in the Sales Promotion Department.

Ms. McMiller testified that Mr. Calza had specified that the company wanted a white male for the position in the Sales Promotion Department. She further testified that Mr. Calza had said he wanted to place the ad to hire an Assistant Manager for the Department. Ms. McMiller also stated at trial that she used the word "trainee" in the ad to thwart Ms. Theiss's previously announced desire for the job of Assistant Manager. Mr. Calza specifically testified to the contrary on these points.

The Court finds the credible evidence to show that Mr. Calza never requested a white male, never announced that applicants were being sought for the job of Assistant Manager, and never asked Ms. McMiller to word the ad so as to preclude Ms. Theiss from being considered for the job. First, Ms. McMiller testified that these statements from Mr. Calza came out in the course of seven or eight meetings held between her and Mr. Calza before the ad was placed, between the start of her job on September 4 and September 26, 1974. However, the evidence demonstrates that Ms. McMiller actually began performing her duties on September 6 and that the ad was placed by noon that day. Second, Ms.

McMiller testified that she did not feel Mr. Calza was discriminating against Ms. Theiss. Finally, Ms. Theiss stated in her EEOC charge that she did not speak to Mr. Calza about the job until she heard that the company was interviewing people. Because no interviews were held until after the ad ran, Ms. Theiss's request for consideration for the position of Assistant Manager could not possibly have affected the wording of the ad.

As a result of the newspaper advertisement, applicants were interviewed for the job. Chuck Schloss was interviewed on September 13 and commenced work on September 23, 1974. Mr. Schloss was graduated from high school in 1972. According to his application, he was 22 years old when first employed by defendant. At trial he described his job as "assistant sales promotion." He followed Mr. Calza's directions, as did all other employees in the department. Mr. Schloss was hired at the rate of $3.50 per hour. Eighty per cent of his time on the job was spent doing photography and audio-visual work. The remainder of the time he just helped out around the department. Mr. Schloss was given Mr. Calza's old desk because it was the only vacant desk in the department with a phone.

The Court finds that the position of Assistant Manager in the department was left vacant through the time Mr. Schloss was hired. The company did this because the top management wanted to see how Mr. Calza would work out in the position of Manager; although Mr. Calza was unaware of it, he was, in effect, serving a probationary period.

In August or September, 1974 plaintiff had indicated to Mr. Calza that she was interested in his former position of Assistant Manager of the Sales Promotion Department. Mr. Calza, who still had a good relationship with plaintiff, jokingly responded that she could not have the job because she was a girl. Mr. Calza stated at trial that he used this remark to get out of the situation; because of their friendship, Mr. Calza was embarrassed to tell plaintiff

that he did not feel she was qualified for the job.

In October, 1974 Mildred Lucas (also known as Mildred Sertle and Junior Fabick) was given the position of Administrative Assistant in the department. Ms. Lucas is the daughter of the president of defendant Fabick.

Plaintiff, upon hearing of the promotion of Mildred Lucas, went in to see Ms. McMiller. Plaintiff was upset and asked for a transfer. Mr. Calza was called and sat in on the meeting. He indicated to plaintiff that he had agreed with the recommendation to promote Ms. Lucas. Plaintiff asked Mr. Calza if he wanted her to quit and he said it was up to her.

Tom Calza's relationship with plaintiff steadily grew worse. Mr. Calza and Ms. Lucas agreed that she should talk to plaintiff to see if the situation could be eased. Ms. Lucas and plaintiff discussed plaintiff's request for a transfer. Ms. Lucas asked plaintiff if she would cooperate with her and the rest of the department. According to the testimony of Ms. Lucas, plaintiff said no, she would not cooperate; plaintiff denies this. At trial plaintiff testified that she had asked for the transfer because she felt she was otherwise "bucking the boss's daughter for promotion." Plaintiff, according to the testimony of Ms. Lucas and Mr. Calza, never during this period mentioned her contention that defendant had discriminated against her in hiring Chuck Schloss. In fact, according to Ms. Lucas's testimony, plaintiff stated to her that Ms. Lucas got the job plaintiff had wanted. Ms. Lucas became the Assistant Manager in the Sales Promotion Department in March or April, 1975.

Various complaints were voiced in the latter months of 1974 regarding plaintiff's work. One of her functions was to print forms to be used by Department and Branch Managers. Various managers called, complaining about not receiving requested forms. Helen Seibert, the secretary in the department, had to take the calls and listen to the complaints because plaintiff was frequently away from her work station and would not answer her page. Seibert complained to Ms. Lucas who, in turn, discussed the matter on several occasions with Mr. Calza.

The defendant has a policy requiring employees to work the day before and the day after a holiday in order to receive holiday pay. Plaintiff admits she was aware of this policy. New Year's Day 1975 was on a Wednesday. Plaintiff did not work Thursday or Friday, January 2 and 3. On either Monday or Tuesday, January 6 or 7, Ms. Theiss asked Mr. Calza to adjust her time card showing that she had worked so she could be paid for the New Year holiday. At this time, Mr. Calza considered the serious morale problem in the department involving Ms. Theiss. He could not see that it was going to get better. On the afternoon of January 7, he decided to terminate her employment. On the morning of January 8, she was terminated.

Plaintiff filed a charge of sex discrimination with the EEOC on January 24, 1975, after her request for unemployment compensation had been denied. Plaintiff received a notice from the EEOC of her right to institute this lawsuit and filed this action within ninety days of receipt of the notice.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e–5.

Plaintiff has alleged that she was discriminated against on the basis of her sex in the terms and conditions of her employment. Specifically, plaintiff alleges that she was not given a promotion to the position of Assistant Manager of the Sales Promotion Department and that she was the victim of a retaliatory discharge, in violation of Section 704(a) of Title VII. 42 U.S.C. § 2000e–3(a).

The evidentiary standards in Title VII cases were first set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). According to those standards, plaintiff must first make out a prima facie case of discrimination. If she is

successful, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's being rejected for the position, in order that the inference of discrimination may be rebutted. Finally, in order to prevail, plaintiff must show that the reason given by the employer for her rejection was a pretext to cover up a discriminatory motive. The Court holds that plaintiff here did not make out a prima facie case regarding her desire for promotion, and even if she had, defendant articulated nondiscriminatory reasons for rejecting her bid for promotion, which were not shown by plaintiff to be pretextual.

■ The Court turns again to *McDonnell Douglas* for the standards governing what constitutes a prima facie case. First, plaintiff must show she is a member of the protected class. Second, plaintiff must prove that she applied and was qualified for a job for which the defendant was seeking applicants. Third, plaintiff must prove her application was rejected. Last, plaintiff must demonstrate that after her rejection, the employer held the position open and continued to seek applicants from persons with qualifications similar to plaintiff's. 411 U.S. at 802, 93 S.Ct. at 1824.

■ In this case, plaintiff's prima facie case falters on the second step of the *McDonnell Douglas* analysis. It has not been shown by plaintiff that defendant was seeking applicants for the position of Assistant Manager or that she was qualified for that position. The evidence demonstrates that the company was looking for someone to relieve Tom Calza of some of his duties after he became Manager. The position of Assistant Manager was left vacant by the company because Tom Calza was serving a probationary period as Manager. Chuck Schloss was not hired to train as an Assistant Manager; the bulk of his duties consisted of performing Tom Calza's former duties with respect to photography and audio-visual work. When the position of Assistant Manager was filled, it was a woman, Mildred Lucas, who got the job.

Even if defendant had been seeking to hire someone as an Assistant Manager, plaintiff has not met the *McDonnell Douglas* requirement of showing she was qualified for the job. Her direct superior, Tom Calza, stated that he had agreed with the recommendation to promote Mildred Lucas over plaintiff to the position of Administrative Assistant. The position of Administrative Assistant, which plaintiff apparently viewed as a training slot for the Assistant Manager position, went not to plaintiff but to Mildred Lucas, another female employee of defendant. Further, plaintiff's experience in the Sales Promotion Department was limited; she did not have the broad experience that Tom Calza had possessed when he became Assistant Manager. Finally, there were numerous complaints about the way plaintiff had performed her job. Competence and efficiency are certainly looked-for qualities in a prospective management employee.

Thus, because plaintiff has failed to establish that the position of Assistant Manager was open and because she failed to prove that she was qualified for the job if it had been open, the Court holds that plaintiff failed to sustain her burden of making out a prima facie case. Moreover, even if plaintiff had established the inference that discrimination led to her not getting the job of Assistant Manager, defendant articulated nondiscriminatory reasons regarding her qualifications and competence that explain why she would not have been selected for the job had it been open. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256–58, 101 S.Ct. 1089, 1095–1096, 67 L.Ed.2d 207 (1981). Plaintiff has not proven these reasons to be pretextual. *Id.* at 256, 101 S.Ct. at 1095. At most, plaintiff here may have been a victim of nepotistic practices on the part of defendant; for this, Title VII affords no relief.

■ In addition to her claim regarding defendant's failure to grant her a promotion, plaintiff also alleges that she was the victim of a retaliatory discharge. In a retaliatory discharge case, as in any other Title VII action, plaintiff has the initial

burden of proving by a preponderance of the evidence a prima facie case of discrimination. *See Texas Dep't of Community Affairs v. Burdine, supra; Womack v. Munson*, 619 F.2d 1292 (8th Cir. 1980). If plaintiff is successful in proving a prima facie case, the burden then shifts to defendant to articulate a nondiscriminatory reason for defendant's action. *Burdine, supra; Womack, supra.* If defendant carries this burden, plaintiff may still prevail by proving by a preponderance of the evidence that the legitimate reasons offered by defendant were not defendant's true reasons but were in reality merely a pretext for discrimination. *Burdine, supra; Womack, supra.*

Because plaintiff's EEOC charge was filed after the date of her discharge, she can rely only on that part of Section 704(a) that prohibits employers from discriminating against an employee who opposes an unlawful employment practice.

■ Section 704(a) of Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter...." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliatory discharge, plaintiff must show (1) that she opposed an unlawful employment practice, (2) that she was discharged, and (3) that there was a causal connection between the opposition and the discharge. *See Keys v. Lutheran Family and Children's Services of Missouri*, 668 F.2d 356 (8th Cir. 1981); *Womack, supra.* In conjunction with the first element of the prima facie case, plaintiff need not prove that defendant actually discriminated against her so long as plaintiff sincerely believed that there was discrimination. *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978); *Mosley v. General Motors Corporation*, 497 F.Supp. 583, 590 (E.D.Mo.1980). Retaliation need not have been the sole factor in the employer's decision to discharge plaintiff; plaintiff can prevail as long as retaliation was a contributing factor. *Keys, supra; Coleman v. Missouri Pacific Railroad*, 622 F.2d 408, 410 (8th Cir. 1980).

■ The Court holds that plaintiff has not made out a prima facie case of retaliation. The credible evidence shows that plaintiff never complained to anyone with defendant that she was the victim of sex discrimination. Plaintiff, in fact, admitted to Mildred Lucas that Ms. Lucas got the job that plaintiff had wanted. Additionally, plaintiff admitted that she was dissatisfied with the turn of events at John Fabick Tractor Company because she felt she was competing with the boss's daughter for promotion. Thus, the evidence indicates that plaintiff failed to meet the first requirement for establishing a prima facie case of retaliation.

Even if plaintiff had made out a prima facie case of retaliation, defendant articulated nondiscriminatory reasons for plaintiff's dismissal that would rebut the inference of discrimination which a prima facie case presents. Plaintiff did not show that these reasons were pretextual. Several witnesses testified to complaints that had been voiced about plaintiff's work. Furthermore, both Tom Calza and Mildred Lucas testified to the morale problems that were being caused by plaintiff's disruptive behavior. Finally, plaintiff's request that Tom Calza falsify company records for her was a reasonable basis upon which defendant based its decision to terminate plaintiff.

Therefore, because plaintiff has failed to prove that she was discriminated against on the basis of sex or in retaliation for her opposition to defendant's employment practices, judgment will be entered in favor of defendant. However, defendant's request for attorney's fees will be denied because the Court does not find that plaintiff's lawsuit was "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).