**48**

Sheila D. DEWEY, Plaintiff,

v.

R.L. POLK & COMPANY, Defendant.

No. 82–0850–CV–W–5.

United States District Court,
W.D. Missouri, W.D.

Jan. 31, 1984.

George A. Wheeler, Kansas City, Mo., for plaintiff.

Basil W. Kelsey, Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, District Judge.

This matter is before the Court following a one-day bench trial held January 26, 1984. Plaintiff, a black female and former employee of defendant, seeks recovery of back pay plus attorneys' fees and injunctive and declaratory relief for defendant's alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Specifically, plaintiff alleges that the defendant discriminated against her on account of her race in violation of 42 U.S.C. § 2000e–2(a), and retaliated against her because of her opposition to defendant's allegedly discriminatory employment practices in violation of 42 U.S.C. § 2000e–3(a). At trial, plaintiff stated that she did not seek reinstatement. Plaintiff also brought a claim pursuant to 42 U.S.C. § 1981 which was dismissed prior to trial for failure to meet the applicable statute of limitations.

Plaintiff resigned from her employment with the defendant on May 13, 1977, and alleges discrimination by reason of a constructive discharge arising out of (a) an incident on October 28, 1976, in which plaintiff was touched on her shoulder by her supervisor during a confrontation between the two, (b) a three-day disciplinary layoff which plaintiff claims was in retaliation for her filing a charge of discrimination with the Equal Employment Opportunity Commission, and (c) the promotion of a co-worker, Charlotte Williams, which plaintiff claims was done in a discriminatory manner.

After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby enters the following Findings of Fact and Conclusions of Law. Any finding of fact equally applicable as a conclusion of law is adopted as such, and any conclusion of law applicable as a finding of fact is similarly adopted as such.

## FINDINGS OF FACT

1. Defendant R.L. Polk & Co. is an employer within the meaning of 42 U.S.C. § 2000e *et seq.*

2. Plaintiff is a black female citizen of the United States.

3. Plaintiff was employed by the defendant at its Kansas City plant on July 10, 1973 as a central examiner.

4. Between 1973 and 1976, there were problems regarding absenteeism and tardiness with Polk employees at the Kansas City plant. On February 13, 1976, a notice was posted by Polk management which stressed the need for regular attendance and punctuality at work. The notice also stated that the Company would discipline employees for excessive tardiness and poor attendance.

5. The company used a progressive discipline procedure under which employees receive, in chronological order, verbal

warnings, written warnings and disciplinary layoffs prior to termination.

6. Decisions on discipline for excessive absenteeism or tardiness were made following periodic reviews of the employees' attendance records. The managers and supervisors would meet to review the attendance records of the central examination employees, and would consider each employee's attendance record and particular situation and assess discipline if they believed it was warranted.

7. From January 22, 1976 to February 3, 1976, plaintiff was absent twice and tardy four times. On February 4, 1976, plaintiff was given a written warning for excessive tardiness.

8. On May 25, 1976, plaintiff was given a verbal warning for repeated talking which interfered with production.

9. On October 21, 1976, plaintiff returned to work late from a morning break and was given a written reprimand.

10. On October 28, 1976, a payday, Vern Meads, the central examination supervisor, distributed the paychecks to the central examination employees at the start of their shift. In accordance with company policy, Meads returned all of the unclaimed checks to the payroll department. Plaintiff arrived late to work and missed the distribution of the checks. Plaintiff timed in, went to her desk and sat without working for approximately 20 minutes. Meads summoned the plaintiff into the production manager's office and confronted her about her failure to work. Meads became aggravated with the plaintiff, telling plaintiff to either start working or go home. In the process, Meads tapped plaintiff lightly on the shoulder. Plaintiff asked Meads whether she could have her paycheck before she left. Meads replied that she could, and plaintiff picked up her check, timed out and left work. Later the same day, plaintiff filed a charge with the EEOC alleging that Meads had discriminated against her by "punching" her during their discussion. On November 8, 1976, the company received notice of the charge.

11. Plaintiff and Meads had a good working relationship both before and after the October 28 incident. The physical contact caused by Meads was the product of Meads' aggravation with plaintiff for her tardiness and her refusal to work, and was not motivated by a racially discriminatory purpose, nor were Meads' actions undertaken with the intention of rendering plaintiff's working conditions intolerable.

12. During the period from October 25, 1976 to November 10, 1976, plaintiff was absent two days, tardy three days, and left work one day after one hour for no reason. On November 11, 1976, the company assessed plaintiff a three-day disciplinary layoff for excessive absenteeism and tardiness. On November 15, 1976, plaintiff filed a charge with the EEOC claiming that the disciplinary layoff was either racially motivated or in retaliation for her filing the previous EEOC charge.

13. In issuing the disciplinary layoff, the company was motivated solely by plaintiff's failure to comply with the expressed company policy discouraging absenteeism and tardiness, and the company was acting consistently with its policy of progressive discipline. The disciplinary layoff of November 11, 1976 was not motivated by any racially discriminatory purpose, was not taken in retaliation for the plaintiff's previous EEOC charge, and was not taken with the intention of rendering plaintiff's working conditions intolerable.

14. Charlotte Williams, a white central examination employee, was absent 20 days in 1976, and a significant amount of her absenteeism was due to pre-natal and postnatal medical problems arising from the birth of her child in 1976. The company considered these problems in determining whether discipline was appropriate in her case. Williams received a written reprimand in February of 1976 for tardiness.

15. On May 13, 1977, plaintiff informed the company that she was resigning effective that day without stating a reason. From January 1, 1977 to the date of her resignation, plaintiff was absent 19 days. Nevertheless, the company did not disci-

pline her. From January 1, 1977 to May 13, 1977, Charlotte Williams was absent nine days.

16. In early June, 1977, Meads informed the company that she was going to resign effective June 24, 1977. Neither the company officials were aware of Meads' plans for resignation before this time. Subsequently, Williams was chosen to replace Meads as supervisor, and Williams accepted the promotion. Meads trained Williams for the supervisor position during the interim period.

17. The action by the company in selecting Williams for the promotion was not motivated by racial considerations. Furthermore, in light of the facts that Williams' promotion came long after plaintiff resigned and that plaintiff was unaware of Meads' plans for resignation at the time she resigned, it is clear that the acts of the company in selecting Williams for promotion were not taken for the purpose of making plaintiff's working conditions intolerable or forcing her to quit.

18. The company's employee termination report stated that the company would rehire the plaintiff if she applied. The plaintiff did not attempt to return to her former employment after quitting in May, 1977.

19. After leaving Polk, plaintiff was employed by Modern Handicraft, but was terminated after two months for absenteeism.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties herein and has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e–5(f).

2. Plaintiff relies on a disparate treatment theory to establish her claim of discrimination. This type of theory has three stages: first, plaintiff's establishment of a prima facie case; second, defendant's rebuttal of the prima facie case; and third, plaintiff's proof that defendant's rebuttal is a pretext to cover a discriminatory motive. *McCosh v. City of Grand Forks,* 628 F.2d 1058, 1062 (8th Cir.1980).

In order to establish a prima facie case of discriminatory discharge, a plaintiff must show (1) that she was a member of a protected class, (2) she was capable of performing the job, and (3) she was discharged from the job. *See Osborne v. Cleland,* 620 F.2d 195, 198 (8th Cir.1980).

In order to rebut a prima facie case, the defendant need only articulate a legitimate business reason for the discharge, and an employer bears no burden of persuading by a preponderance of the evidence that it was actually motivated by its proffered reason. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1254 (8th Cir.1981).

If the employer does articulate a justification reasonably related to the achievement of a legitimate goal, the plaintiff must show that the defendant's articulated reason is a mere pretext for discrimination; the burden of persuasion remains on the plaintiff who must convince the trier of fact by a preponderance of the evidence that the challenged employment practice is discriminatory. *Kirby v. Colony Furniture Co., Inc.,* 613 F.2d 696, 703 (8th Cir. 1980).

3. Plaintiff resigned from Polk in May, 1977, and argues that she was constructively discharged. Therefore, a constructive discharge must be shown in order for the plaintiff to make a prima facie case. *See Johnson v. Bunny Bread, supra,* 646 F.2d at 1256. A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces her to quit. *Id.* To constitute a constructive discharge, the employer's actions must have been taken with the intention of forcing the employee to quit. *Id.*

4. In this case, none of the incidents complained of, either individually or in combination, created an intolerable working condition. The "touching" incident with the supervisor was not the result of a racially discriminatory motive on the part of the supervisor, nor did the supervisor act with the purpose of forcing the

plaintiff to quit. Rather, this incident arose out of the supervisor's justifiable aggravation over the plaintiff's tardiness and refusal to work on the morning in question. Similarly, the three-day layoff was consistent with the company's policies concerning absenteeism and progressive discipline, and was completely justified in light of the plaintiff's history of absence and tardiness. This disciplinary action was not taken for the purpose of creating intolerable working conditions. Finally, the actions of the company in promoting Williams after the plaintiff had quit her employment were not taken with any racially discriminatory intent, and could not possibly have been taken with the purpose of forcing the plaintiff to quit, because the plaintiff had already resigned when the decision was made to promote Williams.

■ An employee alleging constructive discharge "may not be unreasonably sensitive to his working environment. A constructive discharge arises only when a reasonable person would find conditions intolerable." *Johnson v. Bunny Bread, supra,* 646 F.2d at 1256.

■ There was no credible evidence presented at trial indicating that the defendant discriminated against the plaintiff on the basis of race, or that the defendant acted with the intention of creating intolerable working conditions in order to force the plaintiff to quit. Accordingly, this Court concludes that plaintiff has not established a constructive discharge and has, therefore, failed to demonstrate a prima facie case for discriminatory discharge.

■ 5. Even assuming the establishment of a prima facie case, the Court concludes not only that the defendant has articulated legitimate non-discriminatory reasons justifying each of its acts alleged to be discriminatory, but also that the defendant has established the same by a preponderance of the evidence. Likewise, the Court concludes that the plaintiff has failed to establish that the above reasons articulated by the plaintiff were mere pretexts for discrimination.

■ 6. Regarding plaintiff's claim of retaliatory discipline, in order to establish a prima facie case plaintiff must show (1) that she opposed an unlawful employment practice, (2) that she was subsequently retaliated against, and (3) that there was a causal connection between the opposition and the retaliation. *Keys v. Lutheran Family & Children's Serv. of Mo.,* 668 F.2d 356, 358 (8th Cir.1981); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980); *Theiss v. John Fabick Tractor Co.,* 532 F.Supp. 453, 459 (E.D.Mo.1982).

In the present case, plaintiff filed a charge with the EEOC on October 28, 1976 complaining of the "punching" incident with her supervisor. The defendant received notice of this charge on November 8, and on November 11 the defendant assessed plaintiff a three-day disciplinary layoff for excessive absenteeism and tardiness.

■ The prima facie causal connection between the statutorily protected activity and the adverse employment action may be established by the plaintiff showing that the defendant was aware of the protected activity and that the adverse employment action followed the protected activity so closely as to justify an inference of retaliatory motive. *Womack, supra,* 619 F.2d at 1296 n. 6. In the present case, the Court finds that the disciplinary layoff of November 11, 1976 was so close in time to plaintiff's filing the EEOC charges on October 28, 1976 that an inference of retaliatory motive arises and plaintiff's prima facie case is thereby established.

■ In retaliation cases, once the plaintiff makes a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the dismissal. *Womack, supra,* 619 F.2d at 1296. The employer need not prove the absence of retaliatory motive, but only produce evidence that would dispel the inference of discrimination by establishing the existence of a legitimate reason. *Id.* If the employer produces evidence of a reason other than retaliation, the plaintiff may still

prevail if the evidence showed the proffered justification was in fact a pretext. *Id.* The overall burden of persuasion remains on the plaintiff. *Id.* Retaliation need not have been the sole factor in the employer's decision to discharge the plaintiff, rather, the plaintiff can prevail as long as retaliation was a contributing factor. *Keys, supra,* 668 F.2d at 359.

█ The Court concludes that the defendant has rebutted plaintiff's prima facie case by articulating a legitimate non-discriminatory reason for the disciplinary layoff. The evidence at trial clearly established that plaintiff had a history of chronic absenteeism while employed by the defendant. Moreover, during the seventeen calendar days immediately preceding the plaintiff's layoff, plaintiff was absent two days, tardy three days, and left work one day after one hour for no reason. The defendant's sole motivation in issuing the disciplinary layoff was to enforce its stated policy of discouraging absenteeism and tardiness, and the layoff was consistent with the defendant's progressive discipline policy. Accordingly, the Court concludes that the plaintiff has failed to demonstrate that the defendant's articulated reasons for the disciplinary layoff were pretextual. Moreover, the Court concludes that the defendant has established by a preponderance of the evidence that the plaintiff was disciplined solely due to her absenteeism.

Accordingly, it is hereby

ORDERED that judgment be entered in favor of the defendant. Each party is to bear its own costs.