Mabel **TART**, Appellant,

v.

**LEVI STRAUSS AND COMPANY**, Appellee.

No. 88-1363.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 21, 1988.

Decided Dec. 29, 1988.

Richard Quiggle, Little Rock, Ark., for appellant.

P.A. Hollingsworth, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Mabel Tart appeals the dismissal of her § 1981 suit against Levi Strauss and Company. At the close of Tart's evidence, the district court[1] ruled that she failed to establish a prima facie case of disparate treatment under the *McDonnell Douglas* standard. We affirm.

## I. BACKGROUND

Tart, who is black, began working for Levi Strauss in its Little Rock Distribution Center as a weight checker in 1978. In the fall of 1979, Tart applied for a promotion to the position of Quality Assurance Coordinator in the Womenswear Division. Tart did not receive that position and filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). In settlement of that charge, Tart received the quality assurance position in March 1980.

At that time Tart understood that the position was only temporary and, as expected, it was phased out in May 1981. Prior to the anticipated termination of her quality assurance position, Tart applied for two managerial positions at Levi Strauss, Shipping Manager and Replenishment Manager. She did not receive either position. Levi Strauss also interviewed Tart for a position in the Jeanswear Division in Knoxville, Tennessee. The parties dispute whether Tart was rejected or withdrew from that position. However, the district court credited Levi Strauss's evidence that Tart withdrew her application. Thus, when the quality assurance position ended, Tart was without employment. She then commenced this suit under 42 U.S.C. § 1981.[2]

## II. DISCUSSION

### A. Levi Strauss's Motion to Limit Claims

■ The theoretical basis of Tart's suit has been a subject of dispute between the parties. Tart claims that from the outset her suit has been based on a retaliatory discharge theory and that the district court thus erred in applying the disparate treatment analysis of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Levi Strauss claims that the first notice it received that Tart intended to advance a retaliatory discharge theory rather than a disparate treatment theory was in her pretrial brief. After receiving that brief, Levi Strauss filed a Motion to Limit Claims, arguing that it would be substantially prejudiced if Tart was allowed to pursue a retaliatory discharge theory at trial because it received no notice of that claim in the pleadings. At the beginning of trial, the district court granted Levi Strauss's motion and ruled that Tart could not pursue a retaliatory discharge theory at trial. The district court reasoned that because Tart had led

---

**1.** The Honorable George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas.

**2.** Tart also alleged a violation of 42 U.S.C. § 2000e *et seq.* (Title VII). However, the district court dismissed that claim because it was not filed within the ninety-day period following receipt of her notice of right to sue. *See* 42 U.S.C. § 2000e–5(f)(1).

Levi Strauss to believe from the outset that the only issue she raised was disparate treatment, Levi Strauss would be prejudiced by Tart's pursuit at trial of her belated retaliatory discharge theory. In accordance with its ruling, the district court analyzed Tart's evidence primarily in terms of the *McDonnell Douglas* standard for disparate treatment claims rather than the retaliatory discharge model of *Womack v. Munson,* 619 F.2d 1292 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

Based on our review of the pleadings in this case, it does not appear that the district court erred in concluding that Tart had not made it known to Levi Strauss that she intended to advance a retaliation theory. In any event, any error committed by the district court in ruling that Tart could not pursue her retaliatory discharge theory was harmless. *See* Fed.R.Civ.P. 61 (erroneous rulings which do not affect substantial rights are not reversible). Importantly, Tart does not complain that any particular evidence relative to her retaliation theory was excluded. She argues in this appeal that she established a prima facie case of retaliatory discharge at trial and that the district court should have required Levi Strauss to present evidence to rebut the inference of retaliation. Thus, Tart implicitly admits that the district court's grant of Levi Strauss's Motion to Limit Claims did not preclude her from offering evidence relative to her retaliation theory. And, despite its grant of Levi Strauss's motion, the district court did address Tart's retaliation claim in stating that "while retaliation is no longer an issue in this case, * * * the evidence also strengthens [Levi Strauss's] position that there has been no retaliation." Record at 87.

Thus, we conclude that even assuming that the district court erred in ruling initially that Tart could not pursue retaliatory discharge at trial, such error did not affect Tart's substantial rights and was harmless because she ultimately was given an opportunity to introduce the evidence she considered relevant to her retaliatory discharge theory.

## B. Retaliatory Discharge

■ Our review of the district court's factual findings is governed by the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a). That standard compels us to be especially deferential to the district court's determinations regarding the credibility of witnesses. *See Bennett v. Hot Spring County Sheriff's Dept.,* 838 F.2d 291, 293 (8th Cir.1988). Even if we would have weighed the evidence differently, this standard precludes us from reversing the trier of fact unless it is clear " 'that a mistake has been committed.' " *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

The district court stated briefly in its ruling that Tart failed to establish retaliatory discharge, and we believe that conclusion is not clearly erroneous. Under *Womack,* a plaintiff establishes a prima facie case of retaliatory discharge by showing: "(1) statutorily protected participation; (2) adverse employment action; and (3) a causal connection between the two." 619 F.2d at 1296. *See also Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 416 (8th Cir.1984) (retaliation claims brought under § 1981 are treated as though they were brought under Title VII). Tart fulfilled the first two of these requirements; she showed that she filed an EEOC claim and that her job was terminated. However, Tart failed to offer credible evidence that there was a causal connection between these two events.

Tart argues that a comment made during her interview in Knoxville in which the interviewer revealed that he knew that she had filed an EEOC claim is evidence of retaliation by Levi Strauss. The district court rejected Tart's interpretation of the comment, and concluded that the interviewer made the comment only to assure Tart that her EEOC claim would not be held against her. We must afford considerable deference to the district court's credibility determinations, and we cannot say that its rejection of Tart's theory about the inter-

viewer's comment is clearly erroneous. Further, the district court found that Tart withdrew her application for that position, and although the evidence on this point is conflicting, there is evidence to support the district court's conclusion. Tart also concedes that she was not qualified for the other two positions for which she did apply.

Thus, we conclude that even though the district court considered retaliation not to be an issue in this case at the beginning of trial, Tart was given the opportunity to pursue that theory and failed to establish its prima facie elements.

### C. Disparate Treatment

■ The principles regarding the order and allocation of proof for Title VII cases articulated in *McDonnell Douglas* are also applicable to disparate treatment claims brought pursuant to 42 U.S.C. § 1981. *Kenyatta v. Bookey Packing Co.*, 649 F.2d 552, 554 (8th Cir.1981). According to *McDonnell Douglas*, a plaintiff alleging racial discrimination establishes a prima facie case by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted).

If the plaintiff succeeds in establishing this prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Further, if the defendant carries this burden, the plaintiff must then have an opportunity to prove that the defendant's proferred reason for the employee's rejection is a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

The facts in the instant case differ somewhat from the *McDonnell Douglas* model in that this case involves the nonretention rather than the rejection of an employee. However, the Court in *McDonnell Douglas*

noted that its prima facie test must be applied flexibly in order to operate in the varying factual contexts in which discrimination claims arise. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13. *See also International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). The operative inquiry is whether Tart has produced sufficient evidence to create an inference that Levi Strauss made an employment-related decision with respect to her based on her race. *See LeGrand v. Trustees of Univ. of Arkansas at Pine Bluff*, 821 F.2d 478, 480 (8th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988).

Applying the *McDonnell Douglas* standard, we agree with the district court that Tart failed to meet her burden of creating an inference that Levi Strauss intentionally discriminated against her in terminating her job and in not hiring her for another position.

It is undisputed that Tart knew from the outset that her position as Quality Assurance Coordinator would last only as long as the Womenswear Division was located in Little Rock. Tart claims that Levi Strauss assured her that she would receive another position in the company when the quality assurance job ended. However, the district court was unpersuaded; it considered Levi Strauss's evidence that no assurance was made to be more credible.

Tart also argues that there were other positions which were open and for which she was qualified when her quality assurance job ended. However, as the district court noted, Tart did not make efforts to apply for such positions. She made applications for two managerial positions, Shipping Manager and Replenishment Manager, and now concedes that she lacked the minimum qualifications required for both of those jobs.

Tart also emphasizes the fact that a white employee, Rentha Lovelady, received a position in the company after Lovelady's job was terminated. The district court rejected Tart's suggestion that this is evidence of disparate treatment because Tart

did not submit an application for the position that Lovelady received.

Accordingly, we find that the district court's conclusion that Tart failed to establish a prima facie case of disparate treatment under *McDonnell Douglas* is not clearly erroneous.

## III. CONCLUSION

We hold that Tart's substantial rights were not affected by the district court's ruling that she could not pursue a retaliatory discharge theory at trial. The district court ultimately allowed Tart to present evidence pertinent to that theory, and it committed no clear error in concluding that she failed to establish its prima facie elements. Similarly, the district court committed no clear error in concluding that Tart failed to create an inference of disparate treatment under the *McDonnell Douglas* standard. Accordingly, we affirm.