798 F.2d 320
 41 Fair Empl.Prac.Cas. 1847,
41 Empl. Prac. Dec. P 36,548
James H. HENDERSON, Jr., Appellant,
v.
CITY OF MEXICO and Mark Pentz, City Manager of Mexico,
Missouri and Harold Strait, Superintendent, Refuse
Department, City of Mexico, Missouri, Appellees.
 No. 85-1716.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 18, 1986.
Decided Aug. 13, 1986.
 
 David C. Howard, St. Louis, Mo., for appellant.
 Louis J. Leonatti, Mexico, Mo., for appellees.
 Before JOHN R. GIBSON, FAGG and MAGILL, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 James H. Henderson, Jr. appeals the decision of the United States Magistrate[1] rejecting his claim that he was demoted in his employment with the City of Mexico, Missouri because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2 (1982). Henderson argues on appeal that the magistrate erred in not explicitly addressing the ultimate question of discrimination even though he found that the demotion was for a legitimate, non-discriminatory, non-pretextual reason. Henderson also argues that the magistrate's finding that the non-discriminatory reason for his demotion was not a pretext for discrimination is clearly erroneous. We affirm the decision of the magistrate.
 
 
 2
 Henderson, a black male, has worked full-time for the City of Mexico, Missouri since July 1952. He served as Superintendent of the Refuse Department for fifteen and a half years before he was demoted to a heavy equipment operator by City Manager Mark Pentz in May 1982. Henderson received only one formal, written evaluation by the City Manager during his tenure as Superintendent of Refuse, in 1973. He was rated "outstanding" in every category except record-keeping. Further, Henderson has received merit pay increases each succeeding year; in fact, he received an annual merit increase one week before his demotion. Pentz, a white male, orally informed Henderson that he was being demoted because of an inability to maintain the municipal sanitary landfill in compliance with state requirements and poor management of the Refuse Department. Henderson was replaced as Superintendent by a white male, Harold Strait, who had minimal experience in refuse disposal and landfill operations.
 
 
 3
 The City introduced evidence that approximately one month before Henderson's demotion, the Missouri Department of Natural Resources (DNR) inspected the City's landfill and noted a number of serious deficiencies. The DNR reinspected the landfill two weeks later and found the deficiencies corrected. Pentz and the City Engineer inspected the landfill, without warning, three consecutive days the week before Henderson was demoted, at least one-half hour after the landfill should have been closed to the public and daily ground cover, required by DNR regulations, begun to be applied. Each day Pentz and the City Engineer found the landfill open and deserted, without proper ground cover, and in violation of DNR regulations in a number of other respects.
 
 
 4
 Henderson introduced evidence tending to show that he properly maintained the municipal sanitary landfill. He testified that the unsatisfactory DNR evaluation was due to circumstances beyond his control, such as a shortage of adequate ground cover and a temporary breakdown of equipment, and he emphasized that the landfill was in compliance when reinspected two weeks later. He also testified that during the summer months, he closed the landfill later than normal, so that many of the deficiencies Pentz and the City Engineer discovered during their inspections were corrected before he left the landfill each day.
 
 
 5
 The City also introduced evidence of Henderson's poor management of the Department. Pentz testified that, under Henderson, the Department operated with more employees than allocated positions, and the resulting payroll and overtime authorized by Henderson contributed to the Department's operating deficit. After Strait's appointment the number of employees in the Department and the payroll were reduced substantially without detriment to refuse collection or disposal. The City introduced evidence that Henderson failed to prepare forms and reports as requested by Pentz, and that he failed to control the Departments's high rate of turnover and absenteeism.
 
 
 6
 Henderson argued that he properly completed all paperwork, and that Pentz never informed him of management problems in the Department, as he did with Henderson's successor. Henderson conceded, however, that he was unable to deal with the high rate of absenteeism and turnover in the Department.
 
 
 7
 Finally, the City introduced evidence that Henderson had violated City policy on at least two occasions by using City equipment in his private trash-hauling business, and on at least two other occasions by using City vehicles for other personal business.
 
 
 8
 At the time of his demotion, Henderson was the only black City department head. However, the City introduced evidence that Pentz, who had been City Manager for approximately one year at the time he demoted Henderson, had hired or promoted minorities to supervisory positions, and had appointed minorities to City commissions and oversight boards. In fact, since Pentz has been City Manager, thirteen percent of employees hired by the City have been minorities, twice the minority population of the surrounding county. The City also introduced evidence that Pentz had disciplined or demoted other city employees, most of them white males, for poor work performance or violating City policies.
 
 
 9
 By consent of the parties, this case was tried before a United States Magistrate. See 28 U.S.C. Sec. 636(c) (1982). The magistrate explicitly applied the three-stage analysis for disparate treatment claims set out in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). He concluded that although Henderson had established a prima facie case, the City had carried its burden of demonstrating that Henderson was demoted for a legitimate, non-discriminatory reason, namely, an inability to effectively perform his job. The magistrate found that Henderson did not maintain the landfill in compliance with DNR regulations, that he failed to fill out the necessary reports, that he lacked supervisory skills and was unable to control absenteeism in the Department, and, that he had improperly used city vehicles and equipment for personal use. The magistrate finally concluded that Henderson had failed to show that the appellee's stated reasons for the demotion were pretextual. He noted there was no evidence that the City at any time treated minority employees differently from white employees.
 
 I.
 
 10
 Henderson's principal contention on appeal is that the magistrate failed to apply the proper legal analysis for disparate treatment claims. In United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), the Supreme Court held that when the plaintiff has established a prima facie case and the defendant has introduced evidence of a legitimate reason for the adverse action against the plaintiff, "the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII." Id. at 714-15, 103 S.Ct at 1481. At that stage, the Court noted, "the district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.' " Id. at 715, 103 S.Ct. at 1481. (quoting Burdine, 450 U.S. at 253); the presumption of discrimination raised by the McDonnell Douglas-Burdine analysis "drops from the case," id. at 715 (quoting Burdine, 450 U.S. at 253, 101 S.Ct. at 1093), "and 'the factual inquiry proceeds to a new level of specificity.' " Id. (quoting Burdine, 450 U.S. at 255, 101 S.Ct. at 1094).
 
 
 11
 Henderson argues that although the magistrate explicitly applied each step of the McDonnell Douglas-Burdine analysis--finding that Henderson had made out a prima facie case of discrimination, that the City had presented substantial evidence of a legitimate, nondiscriminatory reason for the demotion, and that this reason was not pretextual--he did not address the ultimate issue of discrimination. Although Henderson concedes that the plaintiff's burden of proving the defendant's legitimate, nondiscriminatory reason was pretextual "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination," Aikens, 460 U.S. at 717, 103 S.Ct. at 1483 (Blackmun, J., concurring) (quoting Burdine, 450 U.S. at 256, 101 S.Ct. at 1095), he contends that these two inquiries are logically distinct. We need not decide whether Henderson is correct, for we believe that the magistrate addressed the question of discrimination. The magistrate specifically found that there was "no evidence presented that the defendant had at any time treated white employees differently than any other employee, whether black or of another minority group." Henderson v. City of Mexico, No. N83-0137C, slip op. at 14 (E.D.Mo. May 17, 1985) (opinion of Kingsland, Mag.) He concluded by noting that, "It was the prerogative of the City of Mexico to demote the plaintiff when he was found to be incapable of handling his job in a satisfactory manner." Id. Although the magistrate did not articulate his findings on the ultimate issue with the most exacting clarity, his decision leaves no doubt that he considered and decided the question of intentional discrimination, as required by Aikens.
 
 
 12
 Henderson also argues that the magistrate erred by not considering indirect evidence of discrimination, specifically, evidence that Pentz treated white employees in comparative situations differently from the way he was treated. Indirect evidence of discrimination, including evidence that minority employees were treated less favorably than comparably situated white employees, is generally admissible to prove the ultimate question of discrimination. Aikens, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3. However, Henderson has not shown that the magistrate improperly excluded any relevant evidence from the trial, nor that he failed to evaluate the comparative evidence of discrimination. Rather, the magistrate's conclusion that there was no evidence Pentz treated employees differently on the basis of race belies Henderson's contention.
 
 II.
 
 13
 Henderson also argues that the magistrate's finding that the reasons offered by the appellants for the demotion were not pretextual, is clearly erroneous.[2] Our review of the record does not leave us with the "definite and firm conviction that a mistake has been made." Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).
 
 
 14
 We affirm the judgment of the magistrate.
 
 
 
 [1]
 The Honorable Robert D. Kingsland, United States Magistrate, Eastern District of Missouri
 
 
 [2]
 Henderson contends that the appellants' proffered reasons for his demotion should have been subject to particularly close scrutiny because the standards by which he was judged were essentially subjective, and administered by non-minorities. See Bell v. Bolger, 708 F.2d 1312, 1319-20 (8th Cir.1983); Royal v. Missouri Highway & Transp. Comm'n, 655 F.2d 159, 164 (1981). The magistrate's opinion indicates, however, that he carefully analyzed the reasons advanced for Henderson's demotion and the evidence offered in support. His findings and evaluation of the evidence make clear that the City's subjective procedures were not being used to screen improper discrimination