William F. BELL, Appellant,

v.

William F. BOLGER, Postmaster
General, United States Postal
Service, Appellee.

No. 82–1417.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1983.

Decided June 3, 1983.

Thomas E. Dittmeier, U.S. Atty., E.D. Mo., Wesley D. Wedemeyer, Asst. U.S. Atty., E.D. Mo., St. Louis, Mo., Stephen E. Alpern, Associate Gen. Counsel, Office of Labor Law, U.S. Postal Service, Washington, D.C., Gregg R. Sackrider, Sr. Asst. Regional Labor Counsel, Office of Labor Law, U.S. Postal Service, Chicago, Ill., for appellee.

Louis Gilden and Janet E. Young, St. Louis, Mo., for appellant.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

William F. Bell, a security police officer for the Postal Inspection Service, commenced this action in the United States District Court for the Eastern District of Missouri, alleging that he had been denied a promotion by the United States Postal Service because of his race and his age. Bell is a black male. He was forty-three years old when he applied for the position of Labor Relations Assistant, along with forty other applicants. Bell was one of the seven applicants interviewed for the job by a review committee, but he was not among the three persons recommended by the committee after the interview process was completed. Charles Stevens, a young white male, was ultimately selected for the Labor Relations Assistant position.

Bell relied upon a disparate treatment theory in presenting his case to the district court.[1] The court held that Bell had established a prima facie case of age and race discrimination, but determined that the defendant had articulated a legitimate nondiscriminatory reason for Bell's nonselection. The court further held that Bell had failed to show that the reasons offered by the defendant were not the true reasons for the

committee's decision not to recommend Bell and thus concluded that Bell did not carry his ultimate burden of proving that the review committee intentionally discriminated against him.

In this appeal, Bell argues that he has established that the reasons offered by the defendant for his nonselection were pretextual and he asks this Court to reverse and remand to the district court with directions to enter a judgment in his favor. Alternatively, he requests that the case be remanded to the court for more specific findings and a proper application of the law. The Postal Service asserts that the district court's findings are not clearly erroneous and that the court's judgment against Bell should be affirmed on the ground that Bell did not establish a prima facie case of discrimination. Because we find that the district court properly held that Bell failed to prove that the reasons offered for the review committee's actions were a mere pretext for race or age discrimination, we affirm.

I.

BACKGROUND

Bell began his employment with the United States Postal Service in 1956. He became a security police officer for the Postal Inspection Service in 1972. From 1973 through 1978, he held various offices with the union that represented the police officers, including that of local president of the Federation of Security Police from 1976 to 1978. In these positions Bell participated in the drafting, filing and processing of grievances; he communicated with officials of the national union regarding the contents of the collective bargaining agreement and supervised the local ratification of that agreement; and he dealt with the Postal Service management regarding various labor problems.

On May 11, 1978, the St. Louis Post Office posted a notice of vacancy for the position of Labor Relations Assistant in the Employee and Labor Relations Department.

---

1. The district court's opinion is reported at 535 F.Supp. 997 (E.D.Mo.1982).

The posted notice indicated that the qualifications for the position included a college-level understanding of business and personnel administration; moderate experience in labor relations, collective bargaining, and training activities; and well-developed human relations and communications skills.

This vacancy was to be filled in accordance with the procedures outlined in Special Postal Bulletin 21140, "Filling Non-Bargaining Unit Positions," dated March 16, 1978. According to the bulletin, an employee of the Postal Service is nominated for a vacancy by filing an application, Form 991, "Personal History Summary," and a rating by the employee's supervisors, Form 2577, "Estimate of Potential." A five-member promotion review committee is then established to make recommendations concerning the best qualified nominees.[2] The committee is to consider the Forms 991 and 2577 of each candidate, and may interview some or all of the nominees who are qualified for the position. Finally, the committee recommends at least three, but no more than five, candidates to the selecting official, who is expected to choose the best qualified of the recommended candidates.

On May 31, 1978, the review committee designated for the Labor Relations Assistant position[3] conducted interviews of the seven best qualified applicants, including Bell. The seven interviewees were notified of their interview appointments approximately one week in advance, but because of an error by Bell's mail carrier Bell apparently did not receive notice of the interview until the day it took place.[4]

Before the interviews began Victor Roberts, the committee chairperson, supplied the committee members with each applicant's personnel folder, a list of potential questions for the interviews, and Postal Form 442, a rating form which was to be used as a guide in evaluating each applicant's performance during the interview. Each interview lasted approximately ten to fifteen minutes. Committee members asked each applicant a set of specific questions: committee member James Moody asked six questions concerning the 1975–1978 National Agreement, the collective bargaining agreement which the Labor Relations Assistant would be called upon to apply and administer. Moody asked Bell only two of these questions, however, because Bell stated that he did not have specific knowledge of the National Agreement.[5]

At the end of the interview committee members individually scored each applicant from one to nine. These scores were then added together to arrive at a total score, and the committee recommended those who received the top three scores: Charles Stevens, whose score was forty-one; Harry Casey, whose score was thirty-seven; and Grace Corbin, whose score was thirty-two.[6]

2. The Post Office official who selects the members of the review committee is responsible for assuring that the committee members have a reputation for fairness and objectivity and the official must make "every effort" to designate at least one minority or female employee to serve on the committee.

3. There were two black persons and one female member on the committee, but the presence of minority or female persons on the selection committee is not sufficient to rebut a prima facie case of discrimination, even if the members of protected groups comprise a majority of those on the committee. See Castaneda v. Partida, 430 U.S. 482, 499–500, 97 S.Ct. 1272, 1282–1283, 51 L.Ed.2d 498 (1977); MacDonald v. Ferguson Reorganized School District, No. 82–1108, slip op. at 16–17, (8th Cir.1983) (Heaney, J., dissenting); Castaneda v. Pickard, 648 F.2d 989, 1004 (5th Cir.1981).

4. Bell was at work in the building in which the interviews were being held, and when he was late for his interview, Victor Roberts, the committee chairperson, contacted him. Bell's supervisor gave him permission to attend the interview. Bell subsequently discovered that his notice had been delivered to the wrong mailbox. The committee members were informed of these circumstances.

5. This agreement was different from the security police agreement Bell had been working with as a union official.

6. Of the three recommended applicants, two were black persons, ages thirty-seven and fifty-three and one was a white person, age thirty-four.

Bell received a score of twenty-eight, the fifth highest. The selecting official, Edward M. Hubert, Director of Employee and Labor Relations, ultimately selected Charles Stevens, a thirty-four-year-old white male, to fill the Labor Relations Assistant position.

After Stevens' selection, Bell filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that he had not been selected by the review committee because of his race and his age. On February 5, 1980, EEOC Complaints Examiner Sue Phillips conducted a hearing at which seven witnesses testified. On April 18, 1980, Phillips recommended that the Postal Service issue a decision finding discrimination by reason of race and/or age and that the Post Office retroactively promote Bell, with back pay, to the position of Labor Relations Assistant or to a similar position. The Postal Service rejected these recommendations, and Bell commenced this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* After a two day trial, the district court issued its findings of fact and conclusions of law, and entered judgment in favor of the Postal Service. Bell appealed to this Court.

## II.

### PRIMA FACIE CASE

█ The district court held that Bell established a prima facie case of race and age discrimination under the test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Bell v. Bolger*, 535 F.Supp. 997, 1001 (E.D.Mo.1982). In *McDonnell Douglas, supra*, the Supreme Court stated that a plaintiff in a disparate treatment case may establish a prima facie case by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted).

The same standards apply in an age discrimination claim, except the plaintiff must establish that he or she is a member of a protected age group rather than a racial minority. *See Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 289–290 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958, 959 (8th Cir. 1978).

The Postal Service argues that the district court erred in applying the *McDonnell Douglas* test to a case involving a promotion. It contends that more than the fourth *McDonnell Douglas* factor is required in such a case and suggests that Bell failed to show that he was rejected by the review committee "under circumstances which give rise to an inference of unlawful discrimination." Appellee's Br. at 16, *citing Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (footnote omitted) (hereinafter *Burdine*).

█ The fourth *McDonnell Douglas* factor might well be modified in promotion cases to require a plaintiff to show that "other employees of similar qualifications who were not members of a protected group were promoted at the time the plaintiff's request for promotion was denied," *see Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981), but appellee's argument that *more* is required is in error. *Hawkins v. Anheuser-Busch, Inc.*, 697 F.2d 810, 813–814 (8th Cir.1982). *See United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (Blackmun, J., concurring) (hereinafter *Aikens*); *Royal v. Missouri Highway and Transportation Commission,* 655 F.2d 159, 163 (8th Cir.1981). Moreover, although the Supreme Court has recently indicated that whether a prima facie case is

established is of less importance once a case is fully tried on the merits, *see Aikens, supra,* —— U.S. at ——, 103 S.Ct. at 1481,[7] we hold that in this case the district court correctly determined that Bell had established a prima facie case.

As the Supreme Court stated in *Burdine, supra,* "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." 450 U.S. at 253, 101 S.Ct. at 1093. Bell presented evidence that he was a member of two protected classes: he is black and was between the ages of forty and seventy at the time he applied for a promotion. Bell was qualified for the position of Labor Relations Assistant; he was one of the seven "best qualified" applicants who were interviewed for the position. Bell was rejected by the review committee, however, and the Postal Service promoted a young white male to fill the position. These facts are sufficient to establish a prima facie case.

### III.

### PRETEXT OF LEGITIMATE, NONDIS-CRIMINATORY REASON

■ In order to rebut the inference of discrimination created by Bell's prima facie case, the Postal Service had to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred for a legitimate, nondiscriminatory reason." *Aikens, supra,* —— U.S. at ——, 103 S.Ct. at 1481, *citing Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094. In this case, the district court found that one legitimate nondiscriminatory reason presented by the Postal Service was that Bell had "no knowledge of the National Labor Agreement," even though he "had adequate notice that the job was labor related and entailed workable knowledge of * * * particular specialties as required in the position." 535 F.Supp. at 1001.

The Postal Service argues that the person ultimately selected for the position, Charles Stevens, was more qualified than Bell and had superior knowledge of the National Agreement. Stevens had a Bachelor of Science degree in Business Administration. He had majored in business management and had taken college-level courses in collective bargaining and labor relations. His Postal Service work experience included three years in the Labor Relations Department where he "experienced many of the duties and responsibilities of the Labor Relations Assistant job," according to his su-

7. In *Aikens v. United States Postal Service Board of Governors,* 665 F.2d 1057 (D.C.Cir. 1981), Louis Aikens, who is black, claimed that the Postal Service refused to promote him because of his race. The Postal Service argued, as it does here, that an employee who established only that he was black, that he applied for a position for which he was qualified, and that the employer selected a non-minority applicant, did not make out a prima facie case of discrimination under Title VII. The Court of Appeals in *Aikens* rejected this argument, holding that a plaintiff need not prove that "he was as qualified or more qualified than the individuals who were promoted" in order to establish a prima facie case. *Id.* at 1059. The Supreme Court granted certiorari. *See* 455 U.S. 1015, 102 S.Ct. 1707, 72 L.Ed.2d 132 (1982).

Justice Rehnquist, writing for the majority, in effect reframed the question by diminishing the importance of whether a prima facie case was met once a case was fully tried on the merits. *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, ——, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (hereinafter *Aikens* ). Rehnquist noted that "[b]y establishing a *prima facie* case, the plaintiff in a Title VII action 'creates a rebuttable presumption that the employer unlawfully discriminated against' him," but then stated that this presumption drops from the case once the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case and responds to the plaintiff's proof by offering evidence of the reasons for the plaintiff's rejection. *Id.* (citations omitted). According to the Supreme Court in *Aikens,* "[w]here the defendant has done everything that would be required * * * if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant," and the trier of fact must simply decide the ultimate issue of whether the rejection was discriminatory within the meaning of Title VII. *Id.*

Justice Blackmun's concurring opinion, which was joined by Justice Brennan, emphasized that the *McDonnell Douglas* framework remained applicable in Title VII cases, *id.* —— U.S. at ——, 103 S.Ct. at 1482, and whether a plaintiff has established a prima facie case certainly remains an important aspect of Title VII law.

pervisors. His supervisors also rated him "very high" or "exceptionally high" in all categories listed on the Form 2577, and commented that he "conducts himself in a business like manner at all times, * * * completes all assignments in a timely fashion without close supervision, * * * easily grasps and retains new information," and through his experience in the Labor Relations Department "has developed good rapport with many high level executives in the St. Louis Post Office."

Because the Postal Service articulated a legitimate, nondiscriminatory reason for Bell's nonselection, the district court "was then in a position to decide the ultimate factual issue in the case," that is, "whether 'the defendant intentionally discriminated against the plaintiff.'" *Aikens, supra,* —— U.S. at ——, 103 S.Ct. at 1481, *citing Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093. The district court held that Bell failed to carry his burden of proving that the review committee's actions intentionally discriminated against him on the basis of race or age. 535 F.Supp. at 1001. The court stated that Bell did not show that "he, himself, was treated differently simply because of his minority status," *id.* at 1002 (citation omitted), and concluded by noting that Bell's argument was "even weaker considering the race and the ages of the three applicants recommended for the position: two were black and one was over forty." *Id.*

■ We note at the outset that the Supreme Court has rejected the "bottom line" analysis implied by the district court's latter observation. *See Connecticut v. Teal,* 457 U.S. 440, 442, 102 S.Ct. 2525, 2529, 73 L.Ed.2d 130, 134 (1982). Merely because other members of a protected class—in this case, black or older persons—were recom-

mended by the review committee does not demonstrate an absence of discrimination. *See id.* 457 U.S. at 452–456, 102 S.Ct. at 2534–2536, 73 L.Ed.2d at 141–143; *Peters v. Lieuallen,* 693 F.2d 966, 970 (9th Cir.1982). Indeed, we question the applicability of a "bottom line" analysis when the person ultimately hired is a young, white male. In any event, we emphasize that "the obligation imposed by Title VII is to provide an equal opportunity for *each* applicant * * * without regard to whether members of the applicant's race [or age group] are * * * proportionately represented." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 579, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) (emphasis in original; citations omitted). *See also Leftwich v. Harris-Stowe State College,* 702 F.2d 686, 691 (8th Cir.1983).

■ Once a defendant has articulated a legitimate, nondiscriminatory reason for the plaintiff's rejection, the proper approach in a disparate treatment case is to determine whether the plaintiff has met his or her ultimate burden by persuading the court that the employment decision more likely than not was motivated by a discriminatory reason or by showing that the employer's proffered reason is unworthy of credence. *Aikens, supra,* —— U.S. at ——, 103 S.Ct. at 1483 (Blackmun, J., concurring). Thus, Bell was entitled to show by either of these two methods that the legitimate, nondiscriminatory explanation given by the Post Office was pretextual. *Id.* We find that the district court afforded Bell this opportunity, and after a review of all of Bell's evidence, concluded that he had failed to prove by a preponderance of the evidence that the Post Office's reason for his rejection was not in fact the true reason for the review committee's failure to recommend him.[8]

---

8. A more explicit analysis of whether Bell had demonstrated pretext by either of the two available methods would have been preferable, but the district court's findings demonstrate that the court clearly considered whether Bell had proven—directly or indirectly—that the review committee discriminated against him. *See generally Johnson v. Wolff's Clothiers, Inc.,* 663 F.2d 800, 803–804 (8th Cir.1981).

Further, we reject Bell's contention that the district court's findings are not in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. Bell argues that the court failed to make specific findings on the issues of: whether the Postal Service's reason for his nonselection was "unworthy of credence;" the effect of the EEOC's recommended decision finding discrimination; the credibility of the witnesses;

There is ample evidence to support the district court's finding in this regard. Bell admitted at trial that he did not know the answers to the questions asked by committee member James Moody concerning the National Agreement even though he knew that the bulk of the Labor Relations Assistant's work was with this agreement. Moody testified that he rated Stevens higher than Bell because Stevens' knowledge of the National Agreement was superior. Moody stated that he recognized that Bell did not work with the National Agreement, but noted that if he "aspired to the position[,] he should have prepared himself for the interview." [9] Moody further stated that the two other candidates recommended by the committee answered the labor relations questions that he asked and had more knowledge of the agreement than Bell.

Testimony by another committee member, Jack LaZard, suggested that Bell's lack of knowledge of the National Agreement "had a profound effect * * * because it was a part of the job description that you'd be administering that national agreement, and I think that if you apply for a position that you should be prepared to prepare yourself for that position * * * as well as you possibly can, and * * * he had not prepared himself." The committee chairperson, Victor Roberts, testified and filed an affidavit in connection with the EEOC investigation which stated that Bell was not as qualified as the recommended candidates and that he had less knowledge of the National Agreement than those who were recommended.[10] Finally, a fourth committee member testified that he rated Bell lower than the other

candidates because "he had inadequate technical knowledge."

Bell nevertheless argues that he demonstrated at trial that his lack of knowledge of the National Agreement was a pretext for race and/or age discrimination. Our review of the district court's findings is limited by the clearly erroneous rule, *see, e.g., Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 1789–1791, 72 L.Ed.2d 66 (1982); *O'Neal v. Riceland Foods,* 684 F.2d 577, 580 (8th Cir.1982), but Bell suggests that a combination of factors casts doubt upon the credibility of the Postal Service's proffered reason in this case. *See Paxton v. Union National Bank,* 688 F.2d 552, 563–564 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). In particular, Bell cites four factors which in his view establish that the Postal Service's legitimate, nondiscriminatory reason is unworthy of credence: the review committee evaluation process was subjective; his statistics demonstrated that blacks and older persons were selected and recommended for promotions less often than whites and younger persons; the EEOC complaints examiner issued a recommended decision finding discrimination; and notes taken by three committee members during the interview and selection process were discarded.

Bell is correct that the subjectivity and reliability of employment procedures are relevant factors in a disparate treatment case, and that subjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminato-

and the effect of his statistics regarding the Postal Service's past promotion record. The trial court does not need to make specific findings on all facts, however, and we find no error in this regard. *See Falcon Equipment Corp. v. Courtesy Lincoln Mercury, Inc.,* 536 F.2d 806, 808 (8th Cir.1976). Findings are adequate if they afford a reviewing court a clear understanding of the basis of the trial court's decision. *Id.; Stanley v. Henderson,* 597 F.2d 651, 654 (8th Cir.1979), *citing Christensen v. Great Plains Gas Co.,* 418 F.2d 995, 1000 (8th Cir. 1969). Although more explicit findings would have been desirable in this case, the district court's findings adequately outline the basis of

its decision. *See Falcon Equipment Corp. v. Courtesy Lincoln Mercury, Inc., supra,* 536 F.2d at 808.

9. Although Bell was not aware of the scheduling of the interviews until the day they took place, *see* note 4, *supra,* he does not allege that this lack of notice was the cause for his unfamiliarity with the National Agreement.

10. All committee members filed affidavits that generally indicated that they chose the best qualified candidates for the position and that Bell was less qualified than those who were recommended.

ry abuse. *See, e.g., Paxton v. Union National Bank, supra,* 688 F.2d at 563 & n. 15; *Royal v. Missouri Highway and Transportation Commission, supra,* 655 F.2d at 164. The form used by the review committee was a subjective rating device. Form 442, "Report on Interview for Supervisory Position," listed nine characteristics: (1) appearance, bearing, and manner; (2) ability in oral expression; (3) stability and social adjustment; (4) mental qualities; (5) vitality; (6) maturity; (7) work attitudes; (8) motivation and interest; and (9) subject-matter knowledge.[11] Below each characteristic, the form contained boxes for ratings ranging from outstanding to below average. This form had not been validated by the Justice Department or the EEOC, and the Postal Service had officially discontinued its use prior to the interviews.

 Moreover, the use of such a subjective rating device, coupled with statistical evidence of a pattern of discrimination, may be probative evidence of pretext. *See, e.g., McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 805, 93 S.Ct. at 1825; *Lamphere v. Brown University,* 685 F.2d 743, 749–750 (1st Cir.1982); *Satz v. ITT Financial Corp.,* 619 F.2d 738, 746 (8th Cir.1980). The statistics Bell introduced at trial were developed from data concerning fifteen promotions that had occurred since 1976 in the Employee and Labor Section of the Labor Relations Department. Bell argues that these statistics demonstrated that blacks and older people were recommended and selected for jobs less often than whites and younger people.

Bell also cites the EEOC decision and the destruction of notes made during the interviews by three committee members as grounds for reversal of the district court's

"no pretext" finding. EEOC Complaints Examiner Phillips concluded that Bell established a prima facie case of age and race discrimination, and that the Postal Service articulated three nondiscriminatory reasons for Bell's nonselection: (1) that Bell had taken no courses relating to labor relations; (2) that Bell had only "average" potential; and (3) that Bell had less knowledge of the 1975 National Agreement than the person ultimately selected for the job.

Phillips found the first two reasons were pretextual because Bell had shown by a preponderance of the evidence that these reasons were unsubstantiated.[12] She found that the third reason was substantiated by the record, but nonetheless concluded that the selection process was tainted by discrimination because the other reasons advanced were pretextual and because the absence of written records made the selection process suspect.

 We agree with Bell that all of these factors are relevant to a determination of pretext in a disparate treatment case, but they are simply not sufficiently compelling in this case to warrant a reversal of the district court's decision. First, use of the Form 442 was undoubtedly a questionable practice, but the review committee members did not base their evaluations solely on the form. Rather, each candidate was evaluated on the basis of the interview, the applicant's official personnel folder and application, and the Form 442. 535 F.Supp. at 1000. Bell thus failed to prove that the subjective nature of the form in fact resulted in discrimination against him. *See id.* at 1001–1002.

---

11. The form also listed several examples of traits included under each characteristic. For example, under "work attitudes," the form stated: "Expressed feelings about job, coworkers, customers, supervisors, and Postal Service; evidence of undue favoritism or bias; sensitivity to minority group and union relations."

12. Bell's Form 2577 stated that Bell "has demonstrated an interest in labor relations. He has attended many seminars, workshops, and classes," and Bell testified that he told commit-

tee members that he had taken courses in labor law, grievance and arbitration, and public unions. Bell's Form 2577 also indicated that his potential was evaluated as "exceptionally high" in all five categories listed on the form. Only Bell's immediate supervisor had signed his Form 2577, however, despite the requirement that *both the immediate supervisor and the next highest supervisor* sign the form. These facts were not mentioned by the district court in its opinion.

■ Second, Bell's statistics are inconclusive. *See Cova v. Coca-Cola Bottling Co., supra,* 574 F.2d at 961. The sample size was small and the differences in recommendation and selection rates were not that great. *Cf.* Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607.-4(D) (1982) (differences in selection rate may not constitute adverse impact where differences are based upon small numbers and are not statistically significant).

■ Third, while the EEOC's recommendation that a finding of discrimination be made is entitled to deference, *see, e.g., Plummer v. Western International Hotels Co.,* 656 F.2d 502, 504–505 (9th Cir.1981); *Blizard v. Fielding,* 572 F.2d 13, 15–16 (1st Cir.1978), the EEOC complaints examiner found that the record supported the Postal Service's contention that Bell had less knowledge concerning the National Agreement than Stevens, the person ultimately hired. This finding is consistent with, not contrary to, the district court's decision.

■ Finally, although the EEOC examiner also relied upon the unavailability of personal notes made by three committee members as evidence of discrimination against Bell, we cannot say that this evidence proves that the Postal Service's reason was pretextual. Bell cited *Cova v. Coca-Cola Bottling Co., supra,* 574 F.2d at 961, in support of his argument that "the lack of formal, contemporary records may cast doubt on the credibility of an employer's subsequent explanations of a discharge." *Id.* In *Cova,* only one employee's oral testimony supported the company's proffered reason for the employment decision at issue, but we nevertheless concluded that there was no clear error in the district court's determination that the company did not violate the Age Discrimination in Employment Act. *Id.* In this case, the review committee's recommendation was not destroyed, and committee members unanimously indicated that they did not rate Bell as high as the other applicants because he was less qualified based on his lack of knowledge of the National Agreement. Under these circumstances, that three of the five committee members had discarded their personal notes concerning all the interviewees is simply not a sufficient reason to hold that the district court's findings are clearly erroneous.

IV.

CONCLUSION

Bell brought this suit alleging that he was denied a promotion to the position of Labor Relations Assistant because of his race and his age. After two days of trial, the district court considered the evidence presented under the disparate treatment theory of discrimination established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The court found that Bell had established a prima facie case of race and age discrimination, which shifted the burden to the Postal Service to articulate a legitimate, nondiscriminatory reason for Bell's nonselection by the review committee. The Postal Service met this burden by introducing evidence that the committee did not recommend Bell because of his lack of knowledge of the 1975–1978 National Agreement, which the Labor Relations Assistant would be called upon to apply and administer. The district court then found that Bell had failed to prove that this reason was not the true reason for the committee's decision, and upon a review of the record and Bell's allegations of error taken as a whole, we cannot say that this finding is clearly erroneous.

Accordingly, the judgment of the district court is affirmed.