813 F.2d 893
 43 Fair Empl.Prac.Cas. 343,
42 Empl. Prac. Dec. P 36,878, 1 A.D. Cases 1034
 Ben JOHNSON, III, Appellant,
v.
LEGAL SERVICES OF ARKANSAS, INC.; Gil Glover, Individually
and in his capacity as Executive Director of Legal Services
of Arkansas; Vince Foster; William H. Hodge; Evangeline
Brown; Eddie Walker, Jr.; Bill D. Etter; G. Alan Wooten;
Gregory T. Karber; Floyd Thomas; Ruthie Williams; Sam
Whitfield; Virginia Holt; Patti Goff; Charles Clifford
Gibson, III; and Demaris Hart Edwards, Individually and in
their capacity as members of the Board of Directors of Legal
Services of Arkansas, Appellees.
 No. 85-2440.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 10, 1986.
Decided March 10, 1987.
Rehearing Denied April 27, 1987.
 
 Richard Quiggle, Little Rock, Ark., for appellant.
 Darrell F. Brown, Little Rock, Ark., for appellees.
 Before LAY, Chief Judge, HEANEY, Circuit Judge, and HENLEY, Senior Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Ben Johnson appeals from judgment entered against him by the United States District Court for the Eastern District of Arkansas. Johnson sued Legal Services of Arkansas, Inc. (LSA), Gil Glover, its Executive Director, and the members of LSA's Board of Directors for race, handicap and retaliatory discrimination under 29 U.S.C. Sec. 794 and 42 U.S.C. Secs. 1981, 1983 and 2000e. Johnson's complaint also included a pendent state claim for intentional infliction of emotional distress. Following a bench trial, the court found in favor of the defendants on all claims. On appeal Johnson contends that the district court made numerous factual and legal errors in considering his claims. We affirm in part and reverse and remand in part with directions.
 
 
 2
 Johnson, a blind black attorney, began working for LSA on July 18, 1983 as directing attorney for the Monticello branch office. As will be seen, Johnson's tenure with LSA was stormy. On March 19, 1984 appellee Gil Glover, the Executive Director of LSA, issued three reprimands to Johnson. Johnson filed charges of discrimination with the EEOC on March 22, 1984. On April 27, 1984, Glover began an investigation of Johnson's unauthorized handling of cases he retained from private practice. Johnson filed a charge of retaliation with the EEOC on May 2, 1984. On May 8, 1984, Glover terminated Johnson for failure to rid himself of his private cases and for unauthorized representation of non-LSA clients in violation of his employment contract and LSA policy. The Personnel Committee reinstated Johnson at a hearing on May 12, 1984, and they gave him sixty days from May 23, 1984 to rid himself of his private cases. Johnson was terminated again on January 12, 1985 when the Personnel Committee determined that he had not complied with the condition of his reinstatement. Johnson subsequently filed another retaliation charge with the EEOC.
 
 
 3
 I. DISCRIMINATION CLAIMS.
 
 
 4
 The three-step burden shifting presentation of proof procedure used in Title VII cases is by now all too familiar. The plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the plaintiff succeeds, it then becomes the burden of the defendant to show a legitimate, nondiscriminatory reason for the adverse employment action. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; Green, 411 U.S. at 802, 93 S.Ct. at 1824. Finally, if the defendant succeeds, the plaintiff must prove by a preponderance of the evidence that the reason given by the defendant for the challenged employment action was pretextual. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; Green, 411 U.S. at 804, 93 S.Ct. at 1825.
 
 
 5
 A prima facie case of discrimination consists of proof that the plaintiff is a member of a protected class, and that an adverse employment action was taken against the plaintiff in circumstances from which an inference of unlawful discrimination arises. See Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; Green, 411 U.S. at 802, 93 S.Ct. at 1824. An inference of discrimination is commonly raised in these cases by proving disparate treatment. A plaintiff proves disparate treatment by showing that he was treated less favorably than similarly situated employees who are not in plaintiff's protected class. See Boner v. Board of Commissioners, 674 F.2d 693, 696-97 (8th Cir.1982).
 
 
 6
 The same procedure for the order and allocation of proof is used for claims brought under 42 U.S.C. Sec. 1981, Kenyatta v. Bookey Packing Co., 649 F.2d 552, 554 (8th Cir.1981), and for claims brought under 29 U.S.C. Sec. 794 when the defendant has denied considering handicap in an employment action, Norcross v. Sneed, 755 F.2d 113, 116-17 (8th Cir.1985).
 
 
 7
 In reviewing the decision of the district court, we are bound by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). We cannot hold the district court's findings of fact to be clearly erroneous unless we are " 'left with the definite and firm conviction that a mistake has been committed.' " Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).
 
 
 8
 Johnson challenges three adverse employment actions: (1) the three reprimands given to him by Gil Glover; (2) his first termination by Gil Glover; and (3) his final termination by the Personnel Committee. We will review these three actions separately.
 
 
 9
 In a memo dated March 19, 1984 Gil Glover reprimanded Johnson for being sexist, for poor management, particularly with respect to case acceptance, and for insubordination. Johnson contends that these reprimands were groundless and that they were motivated by his race and handicap. The court found that regardless of the merits of the reprimands, there was no evidence in the record to show that they were discriminatorily motivated by Johnson's race or handicap. We agree.
 
 
 10
 Johnson completely failed to show that with these reprimands he was being treated less favorably in circumstances from which discrimination could be inferred. These reprimands were the product of a bitter dispute between Johnson and Gil Glover in which each party was probably partially right and partially wrong. Disputes generally arise out of mutual misunderstanding, misinterpretation and overreaction, and without more, such disputes do not give rise to an inference of discrimination.
 
 
 11
 Johnson's only disparate treatment evidence relating to the reprimands goes to the charge that he was a sexist. Johnson contends that David Manley, a sighted white male LSA employee was similarly situated. Michal Garland, a former female LSA employee, reported to Gil Glover that Manley had sexually harassed her, and in addition she filed charges with the EEOC as a result of Manley's conduct. We agree that Manley appears to have been a sighted non-minority LSA employee similarly situated to Johnson, but Johnson failed to show that Manley was treated more favorably. Indeed, the record contains no evidence of what action, if any, was taken against Manley. Garland testified that she did not know if any action was taken against Manley. Absent proof that Manley was treated more favorably, Johnson has failed to show disparate treatment.
 
 
 12
 While it appears that the three reprimands were somewhat the result of overreaction on Glover's part and that they may have been inartfully written and a bit overblown, they were not groundless, as claimed by Johnson. In the fall of 1983 two female employees in the Monticello office complained of Johnson's conduct towards them. These complaints were related to Glover by Barbara Smith, Glover's Executive Assistant, and by Kay Allen. Although Glover thought that Johnson's reported conduct was sexist, he chose not to take any action at that time. The problems in the Monticello office were later worked out, and the two female employees stated that they thought the situation was the result of their difficulty in adjusting to Johnson's handicap. Glover was not immediately informed that these problems had been resolved. When he later concluded that Johnson's attitude toward women played a part in a late February, 1984 conflict with Jean Turner Carter, a female Little Rock staff attorney, Glover reprimanded Johnson for being sexist. While it was perhaps a bit strong, this reprimand did have some basis in fact.
 
 
 13
 The poor management reprimand dealt mostly with Johnson's case acceptance practices. Glover reprimanded Johnson for failure to abide by LSA case acceptance policies and for using his own subjective criteria to accept or reject cases. The conflict over case acceptance was well documented in various memoranda, and both Glover and Johnson were probably partially wrong and partially right. This reprimand was not without factual basis.
 
 
 14
 The insubordination reprimand was based on language used by Johnson in several memoranda which Glover perceived to be attacks on himself and LSA. Past memoranda from Johnson had at least insinuated that Glover and LSA were not committed to helping poor blacks. Johnson's memoranda of late February and early March, 1984 contained accusations that Glover was not treating him fairly. Glover interpreted these memoranda as accusing him of discrimination. While Glover's reprimand may have been an overreaction to Johnson's memoranda, it was not groundless. The memoranda showed that Johnson did not take orders or criticism well, and he often used strong language and accusations when he became defensive. He often vehemently challenged Glover's administrative decisions and was insubordinate.
 
 
 15
 There is no evidence in the record regarding these three reprimands from which an inference of discrimination can be drawn. Thus, we conclude that Johnson failed to make a prima facie case of either race or handicap discrimination with regard to the reprimands, and we find no error of fact or law in the district court's decision to that effect.
 
 
 16
 As a result of the reprimands, Johnson filed charges of discrimination with the EEOC on March 22, 1984. On May 8, 1984 Glover terminated Johnson for unauthorized representation of non-LSA clients and for failure to rid himself of his cases carried over from private practice. Other grounds stated for the action were Johnson's failure to cooperate in the investigation of his unauthorized private practice and his past conduct and warnings. Johnson claims that this termination was discriminatorily motivated by his race and handicap. He also contends that Glover terminated him in retaliation for the EEOC charge of March 22.
 
 
 17
 To some extent LSA is governed by federal statutes and regulations. 42 U.S.C. Sec. 2996f(a)(4) states:
 
 
 18
 With respect to grants or contracts in connection with the provision of legal assistance to eligible clients under this subchapter, the Corporation shall--
 
 
 19
 * * *(4) insure that attorneys employed full time in legal assistance activities supported in major part by the Corporation refrain from (A) any compensated outside practice of law, and (B) any uncompensated outside practice of law except as authorized in guidelines promulgated by the Corporation[.]
 
 45 C.F.R. Sec. 1604.3 states:
 
 20
 No attorney shall engage in any outside practice of law if the director ... has determined that such practice is inconsistent with the attorney's full time responsibilities.
 
 Section 1604.4 states:
 
 21
 A recipient may permit an attorney to engage in the outside practice of law for compensation if Sec. 1604.3 is satisfied, and
 
 
 22
 (a) The attorney is newly employed and has a professional responsibility to close cases from a previous law practice, and does so as expeditiously as possible[.]
 
 
 23
 * * *
 
 Section 1604.5 states:
 
 24
 A recipient may permit an attorney to engage in uncompensated outside practice of law if 1604.3 is satisfied, and the attorney is acting [on behalf of]:
 
 
 25
 * * *
 
 
 26
 (b) A close friend or family member[.]
 
 
 27
 * * *
 
 
 28
 When Johnson began work for LSA on July 18, 1983 he had forty-six active cases in his private practice. In his employment agreement, Johnson was given three months to dispose of his private cases. Johnson was later given a three-week extension on this deadline, but he failed to rid himself of his private cases. He offered two explanations for his failure to meet the initial deadline. First, Johnson said that his private secretary who was helping him on the cases found other employment. Second, he stated that he had worked out a plan with another attorney, Julius Kearney, whereby Kearney would take over Johnson's private cases by October 18, 1983. He claimed that Kearney's acceptance of another job made this arrangement impossible. Kearney testified that he did not remember any arrangement with Johnson, and he further stated that had such an arrangement involving that many cases been discussed, he would remember.
 
 
 29
 In the months following the expiration of Johnson's three-week deadline extension, he properly requested and received permission from Glover to take particular action in one or two of his cases. On April 23, 1984 Johnson went to Pine Bluff without Glover's knowledge to try one of his private cases. Glover discovered this unauthorized conduct and in a letter dated April 27, 1984 he informed Johnson that he was going to investigate the matter. A meeting on May 1, 1984 between Glover and Johnson ended in anger before it ever got started, and Johnson was instructed to respond in writing regarding the April 23 trial. On May 2, 1984 Johnson responded in writing to Glover's investigation and also filed a charge of retaliation with the EEOC. On May 8, 1984 Johnson was terminated.
 
 
 30
 The district court found that Johnson failed to establish a prima facie case of discrimination with respect to this first termination. In the context of race and handicap discrimination, we agree. Johnson claims that throughout his tenure Glover knew that he still had private cases. The record indicates that after the original extended deadline, Johnson requested permission to take particular action in only one or two cases. This was hardly enough to indicate to Glover that Johnson still retained a massive private caseload in violation of his employment agreement and LSA policy. It was only when Johnson violated LSA policy by trying a case for a non-LSA client without permission that Glover discovered Johnson's continued substantial private practice.
 
 
 31
 Johnson contends that Sam Pope, Larry Dunklin and Jan Scussel were similarly situated LSA employees who were not terminated for representing non-LSA clients. The district court found that these three were not similarly situated to Johnson, and we agree. As stated in his employment contract, Pope was governed by the same rules as was Johnson. Pope had a very small private caseload when he joined LSA. He obeyed all rules in requesting permission from the Director when time away from work was needed for private practice, and he disposed of his private cases very shortly after joining LSA. Larry Dunklin asked for and received permission to represent a close personal friend in a Title VII case in order to save his friend legal fees. Section 1604.5 expressly covers this situation. Scussel had between five and ten private cases when she joined LSA in May of 1984. She had enlisted joint counsel in all but one case. Three months later, in August of 1984, she was asked to submit a report on her private cases. She listed two cases in which she was actively involved, and they were cases in which she was only attempting to collect legal fees.
 
 
 32
 Johnson failed to show that with his May 8, 1984 termination he was treated less favorably than similarly situated employees who were not members of his protected class. He failed to raise in any way an inference of race or handicap discrimination, and he therefore failed to establish a prima facie case of race or handicap discrimination with respect to his first termination.
 
 
 33
 Johnson's charge of retaliation in connection with his first termination is a more troublesome issue. In order to establish a prima facie case of retaliation under 42 U.S.C. Sec. 2000e-3(a), Johnson needed to show: "(1) statutorily protected participation [in Title VII proceedings]; (2) adverse employment action; and (3) a causal connection between the two." Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). In testimony that is somewhat unclear, on cross-examination Glover in effect may have admitted that he considered Johnson's EEOC charges as one factor in making his decision to terminate Johnson. While this admission may have tended to establish a prima facie case of retaliation, the trial court did find that Johnson's continued private practice was a legitimate, nondiscriminatory, nonpretextual reason for his termination. We find no error in this determination.
 
 
 34
 The district court's finding that the record contained no evidence of retaliation was, however, in error. Although on direct examination Glover denied discrimination on account of EEOC charges, litigation, race or handicap, in light of his cross-examination Glover may have presented a classic mixed motive case in which an unlawfully discriminatory consideration was a discernible factor in an employment decision. In Womack, we adopted a "same decision" test in mixed motive retaliation cases, but we indicated that the discriminatory consideration had to be a substantial factor in the employment decision before the mixed motive analysis applied. Id. at 1297. Under the Womack test, the employer completely escaped liability if he could show that the same decision would have been made absent the discriminatory consideration. Id.
 
 
 35
 We have since decided Bibbs v. Block, 778 F.2d 1318 (8th Cir.1985) (en banc), in which the "same decision" test was modified for Title VII mixed motive situations. Bibbs can be factually distinguished but its holdings are applicable here. Under Bibbs, in a mixed motive case once a plaintiff establishes that a discriminatory consideration played some part in an employment decision adverse to a claimant, he has established a Title VII violation and is entitled to limited relief, including, as may be appropriate, declaratory or injunctive relief and partial attorney's fees. Id. at 1323-24. The employer, however, may avoid reinstatement and backpay if he can prove by a preponderance of the evidence that the same decision would have been made absent the discriminatory consideration. Id. at 1324.
 
 
 36
 The district court did not have the benefit of Bibbs when this case was decided nor do its findings adequately and completely cover the Bibbs problem. We therefore remand Johnson's retaliation claim arising from his May 8, 1984 termination for further consideration. In applying Bibbs to this claim, the court should address Glover's deposition testimony in which he may have agreed that he had taken Johnson's EEOC claim into consideration. The court, however, is not bound to accept this testimony, and, in fact, good reasons exist to doubt its value.
 
 
 37
 Should the court find that retaliation played some invidious part in the May 8, 1984 termination, a violation of Title VII will be established under Bibbs and Johnson will be entitled to limited relief. In that event, the district court should determine whether LSA established by a preponderance of the evidence that the same decision would have been made absent the retaliatory factor. The record contains strong evidence that the same decision would have been made, and in fact later was made, absent consideration of the EEOC charges. Should the court determine that LSA failed to carry this burden, Johnson will be entitled to an appropriate award under the full array of Title VII relief. The court should note that Johnson was reinstated by the Personnel Committee very shortly after this first termination, and any relief awarded in all probability should be minimal. Although no new hearings or evidence appear to be needed for the findings required by this remand, such proceedings are not prohibited.[1]
 
 
 38
 As indicated, Johnson appealed his May 8, 1984 termination to the Personnel Committee. Following a hearing on May 12, 1984, the Committee reinstated Johnson conditioned upon his ridding himself of his private cases within sixty days from May 23, 1984. The Personnel Committee was made up of one black female, one black male and one white male. In early June the LSA Board set up a Management Committee to oversee Johnson in order to create a buffer between Glover and him. The Management Committee consisted of one black male and one white male.
 
 
 39
 Johnson attempted to enlist attorney Don Glover as joint counsel on some of his cases, but he still failed to dispose of all of his private cases. As of May 23, 1984 Johnson was sole attorney in ten cases. On July 30, 1984 Johnson reported to the Personnel Committee that he was attempting joint entry with Don Glover on several of the cases. He stated, however, that he still wanted to be active in most of these cases due to Don Glover's inexperience with Title VII matters. At a hearing on January 12, 1985, almost six months past the sixty-day deadline, the Personnel Committee determined that to a limited extent Johnson was still active in private litigation. They therefore terminated Johnson for failure to comply with the condition of his reinstatement.
 
 
 40
 We have already upheld the district court's finding that Johnson's private practice constituted a legitimate, nondiscriminatory, and nonpretextual reason for his termination. Johnson argues that he tried several times to get responses and clarifications from the Personnel Committee, but was unsuccessful. He contends that he did not know that the Committee's sixty-day deadline was rigid and final. These arguments defy logic. Even though Johnson may have had trouble communicating with the Committee, no one ever told him that he was relieved from the deadline. A conditional reinstatement is very serious, and Johnson violated the condition at his peril.
 
 
 41
 We agree with the district court that Johnson failed to establish a prima facie case of race, handicap or retaliatory discrimination with respect to his final termination. He was given a second chance to comply with LSA policy and he was treated fairly by the Personnel Committee. No inference of unlawful discrimination can be drawn from these circumstances.
 
 
 42
 II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
 
 
 43
 We turn to Johnson's pendent state claim for intentional infliction of emotional distress. The district court found that since there was no basis for Johnson's discrimination claims, there was no support in the record for his claim of intentional infliction of emotional distress. Although to a degree it appears that the court may have used phraseology that unnecessarily tied the discrimination and emotional distress claims together, the result was correct.
 
 
 44
 The elements of the tort of intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) willfully or wantonly performed, (3) which caused severe emotional distress." Lucas v. Brown & Root, Inc., 736 F.2d 1202, 1206 (8th Cir.1984) (quoting Orlando v. Alamo, 646 F.2d 1288, 1290 (8th Cir.1981)). The Arkansas Supreme Court has adopted the approach of the Restatement (Second) of Torts Sec. 46 comment d, in holding that outrageous conduct is "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." M.B.M. Co. v. Counce, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980).
 
 
 45
 There is no evidence of any actions by any of the appellees which rises to the level of outrageous conduct. Hence the district court's conclusion that there was no support in the record for Johnson's intentional infliction of emotional distress claim was clearly required.
 
 
 46
 III. CONCLUSION.
 
 
 47
 We reverse the decision of the district court regarding Johnson's claim of retaliation in his May 8, 1984 termination, and we remand that claim to the court for further proceedings consistent with this opinion. In all other respects, the judgment of the district court should be, and it is, affirmed.
 
 
 
 [1]
 A mixed motive situation is not presented merely because a plaintiff establishes a Burdine prima facie case, Mullins v. Uniroyal, Inc., 805 F.2d 307, 309 (8th Cir.1986), and we do not so hold
 Bibbs applies only when the employee establishes that the employment decision was based on a mixed motive. For example, a mixed motive case under Bibbs exists when the defendant-employer concedes that [a discriminatory consideration] was a discernible factor ... for the employment decision.
 Id. Should the district court decide to treat Glover's deposition testimony as an admission, this example would appear to be directly on point and a mixed motive case might be presented.