## M. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS—ANDREW HARDGE

For the reasons given in Section J above, the Court finds that judgment should be entered in favor of defendants on this claim.

## N. LOSS OF CONSORTIUM—ANDREA HARDGE

Missouri does not recognize a parental loss of consortium claim brought by a child. *Barbera v. Brod–Dugan Co.*, 770 S.W.2d 318, 320–21 (Mo.App.1989). Accordingly, the Court finds that judgment should be entered in favor of defendants on this claim.

## O. LOSS OF CONSORTIUM—ANDREW HARDGE

For the reasons given in Section N above, the Court finds that judgment should be entered in favor of defendants on this claim.

## P. CONCLUSION

For all of the foregoing reasons, and as set forth in its accompanying order, the Court finds that this case was properly removed to the federal court and that summary judgment in favor of defendants should be granted on plaintiffs' complaint.

**Deborah LACEY, Plaintiff,**

v.

**John O. MARSH, Jr., Secretary of the Army, Defendant.**

**No. 89–0194 C(5).**

United States District Court,
E.D. Missouri, E.D.

July 11, 1990.

James E. Tarry, St. Louis, Mo., for plaintiff.

Weseley Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff brought this two count action alleging that defendant discriminated against her on account of her race in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), and in violation of Title 42 U.S.C. § 1981.

Plaintiff contends that defendant racially discriminated against her by failing to promote her even though she was qualified for the position. Immediately prior to trial, plaintiff dismissed without prejudice Count II, which was her § 1981 claim. In light of the Supreme Court decision *Patterson v. McClean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), plaintiff recognized that her claim for failure to promote may no longer be viable.

Count I of plaintiff's complaint alleging a Title VII violation proceeded to trial and was tried before this Court sitting without a jury. The Court, having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulation of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52.

## I. FINDINGS OF FACT

Plaintiff Deborah Lacey is a female citizen of the United States who resides within the Eastern District of Missouri. Defendant John O. Marsh is the head of the Army division. Defendant employed plaintiff in its aircraft systems division in St. Louis as a grade four (GS–4) civilian employee. She was interested in being promoted to a grade five (GS–5) civilian employee and applied for a supply clerk job which she ultimately did not receive.

In January 1986, a woman by the name of Jean Trende was the secretary for Gail Beardsley. She was a GS–5 employee. While a secretary, Jean Trende became interested in working in supply. Her interest developed as she realized that as a secretary she was in a dead-end position. Her belief was that if she transferred to supply, her opportunities for career advancement would be significantly greater.

In February 1986 Trende filled out the necessary forms for a transfer into the supply field. She submitted her application for transfer on March 3, 1986. She was interested in any supply clerk position that became available within the directorate. Before she could be considered for a supply clerk position, however, the Personnel Division had to screen the application. The Personnel Division reviews applications to determine if the applicants are qualified for the positions that they seek.

After Trende submitted her application to the personnel review board for qualification, Cyrus Bode learned of an opening of a supply clerk under his command. Bode, upon learning of the vacancy, initiated a recruit action. The purpose of the recruit action was to direct Personnel to send him a list of people interested in the position. First Mr. Bode considered a lateral list which included a list of all people who were interested in a lateral transfer into the supply clerk position. Trende's name was

not on this list because she had not been qualified for the position at that time. After Bode reviewed the lateral list he also considered other noncompetitive prospects. Bode did not find anyone on those lists to fill the vacant supply clerk position.

After Bode had considered all noncompetitive prospects, Mr. Bode then turned to a competitive procedure. A competitive procedure allows any GS–4 employee to apply for the position for a promotion. The GS–4 applicants compete against each other for the opening.

In March of 1986, plaintiff noticed the posting for the GS–5 position of a supply clerk in Bode's division. She submitted her application because she was interested in a promotion. Once all of the applications were submitted to the Personnel Department, the department reviewed the applications and chose the top fourteen most qualified applicants from the entire pool of applicants. A "register list" of the top fourteen applicants was then submitted to Bode. Plaintiff's name was on that list. If Bode elected to fill the position from this register list, he was compelled to pick the most qualified person on the list to fill the position. Bode, however, still had the option to choose a candidate from the lateral or non-competitive lists.

In Bode's mind, the most qualified person on the list of fourteen was an applicant by the name of Andrea Renee Gregory, a black woman. He felt she was the most qualified particularly because she was the only applicant with a bachelor's degree. Bode found this to be very impressive. Also, Gregory had a number of years experience in the job area which was vacant. Thus, Bode selected Gregory to fill the position near the end of April 1986.

At the time Bode made his selection, it was common knowledge that there was a hiring restriction in effect. Although not a hiring freeze, the restriction prohibited anyone within AVSCOM, the aviation support command, from hiring outside the command without Personnel approval. Ms. Gregory was currently employed in TROSCOM, troop support command, another command separate and apart from AVSCOM. Thus, Bode was restricted from hiring Gregory without Personnel approval.

Until Gregory was approved by Personnel, no one was permitted to formally offer the job to Gregory. Bode's selection of Ms. Gregory was clearly a tentative selection of Ms. Gregory pending approval. Although no one knew the exact amount of time it could take for Personnel approval during the hiring restriction, it was estimated that it could take anywhere from two months to over six months to obtain the necessary approval.

The fact that Ms. Gregory was an outside employee made no difference to Bode's decision to hire her. Despite the delay, Bode was required to pick the most qualified person on the list and Gregory was clearly it. Bode testified that plaintiff Deborah Lacey would not even have been in his first three choices.

After Bode submitted his selection of Gregory to the Personnel Review Board for approval, Trende received her application for transfer to supply back from Personnel with a ruling that she did not qualify for the position of a supply clerk. Trende told her boss Beardsley of the decision. Beardsley contacted Sonja Williams who had reviewed Trende's application for transfer. Williams informed Beardsley that Trende was not specific enough in her job descriptions on her application. Especially, Trende failed to include the proper percentages in describing her time spent at each job doing supply work. Furthermore, Williams informed Beardsley that Beardsley personally needed to review and verify Trende's application with regard to Trende's work for Beardsley.

Beardsley relayed this information to Trende. Beardsley then helped Trende redevelop her application with more specific descriptions of her previous employment. Moreover, Beardsley attempted to contact Trende's private employers to verify her employment there. She was able to verify one job description. Finally, Beardsley verified Trende's employment as her secretary. Beardsley felt it was her responsibility as Trende's supervisor to aid Trende in her renewed application. Beardsley was

impressed with Trende's work, and although she was loathe to see Trende move to another job, she also recognized that Trende had more career opportunities in her desired position.

After the revisions, Trende resubmitted her applications for transfer. This time it was not Williams who reviewed the application, but Darryl Grimmitt. Upon review of the application, Mr. Grimmitt qualified Trende for the position. This occurred on July 7, 1986.

On July 8, 1986 Bode had not heard what was occurring on his tentative hire of Ms. Gregory. He contacted Gregory's personnel officer and learned that she had accepted another position. Thus, Bode put in for a withdrawal of application for Gregory. Bode then discussed this with Beardsley, who was his superior. The two of them came to the conclusion that the work of a supply clerk was piling up. To have another competitive register compiled might take anywhere from two to four more weeks. Beardsley suggested that Bode hire Trende as a lateral. Trende was qualified through personnel for the transfer, she had supply experience which Beardsley had personally verified and Trende appeared fully qualified for the job. The greatest advantage for Bode in hiring Trende was that she worked in AVSCOM and would not require approval from the Personnel Review Board to be hired. Thus, there would be no further delay in filling the position. Accordingly, he hired Trende for the position. Bode was acting entirely within the realm of his powers by hiring Trende as a lateral, through a noncompetitive procedure, rather than choosing to begin the competitive procedures all over again.

After Bode selected Gregory but before he hired Trende, plaintiff complained to her union about race discrimination. This was so despite the fact that the person Bode had chosen, Andrea Gregory, was also black. Lacey's Union directed her to file an EEOC grievance, which plaintiff did. The EEO hearing was on October 15, 1986. After the EEO denied plaintiff's claim, they issued plaintiff a right to sue. Plaintiff subsequently initiated this action.

## II. CONCLUSIONS OF LAW

This court has jurisdiction over the parties herein and has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e *et seq.* Defendant Department of the Army is an employer within the meaning of Title VII for the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(b), 2000e–16(c). Defendant Marsh is sued in his official capacity as Secretary of the Army.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual with respect to the terms and conditions of her employment because of her race. The factual inquiry in a Title VII case is merely whether the defendant *intentionally* discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). In other words, is "the employer ... treating 'some people less favorable than others because of their race, color, religion, sex or national origin.'" *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), *quoting Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977).

Under Title VII, plaintiff has the initial burden of proving a prima facie case of discrimination by demonstrating by a preponderance of the evidence that her failure to be promoted was because of her race. 42 U.S.C. § 2000e–2(h); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). An inference of discrimination is raised by proving disparate treatment. A plaintiff proves disparate treatment by showing that he was treated less favorably than similarly situated employees who are not in plaintiff's protected class. *Johnson v. Legal Services of Arkansas, Inc.,* 813 F.2d 893, 896 (8th Cir.1987).

What constitutes a prima facie case will necessarily vary according to the claim which is being asserted. *Green*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. Therefore, with respect to her claim of discriminatory promotion, plaintiff must show that (1) she belongs to a racial minority; (2) that she applied and was qualified for a promotion for which the employer was seeking applicants; (3) that despite his qualifications she was rejected; and (4) another employee of similar qualifications who was not a member of a protected group was promoted at the time plaintiff's request for promotion was denied. *Bell v. Bolger*, 708 F.2d 1312, 1316 (8th Cir.1983) (modifying the *McDonnell Douglas* analysis for application to discriminatory promotion cases).

An inference of discrimination arises upon the proof of plaintiff's prima facie case because it is presumed that an act, if otherwise unexplained, was motivated by impermissible factors. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. If plaintiff satisfies its burden, defendant must then dispel this inference by articulating legitimate nondiscriminatory reasons for its action. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Green*, 411 U.S. at 802, 93 S.Ct. at 1824. Defendant's burden merely requires him to explain what he has done and his reasons for this action. The employer need only produce evidence which would allow the trier of fact rationally to conclude that the employment decision was not motivated by a discriminatory animus. *Burdine*, 450 U.S. at 256–57, 101 S.Ct. at 1095.

Once defendant has rebutted plaintiff's prima facie case, plaintiff is then given an opportunity to show that the articulated reason is merely a pretext for illicit discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Green*, 411 U.S. at 804, 93 S.Ct. at 1825. Plaintiff's final burden merges with her ultimate burden of persuading the Court that she has been the victim of intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. She can accomplish this in one of two ways. She can demonstrate this directly by establishing that the discriminatory reason more likely motivated the employer, or she can meet the burden indirectly by showing that

defendant's proffered explanation is unworthy of credence. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Reviewing the facts in light of the applicable law, it is clear that defendant did not intentionally discriminate against plaintiff Deborah Lacey. Initially, plaintiff has failed to prove by a preponderance of the evidence a prima facie case that her failure to be promoted was because of her race. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Clearly, plaintiff is a member of a protected class. Further, she was qualified for the position, as the Personnel Division selected her as one of the fourteen most qualified for the position. Finally plaintiff was not chosen for the supply clerk position under Cyrus Bode.

Plaintiff's prima facie case fails in two respects, however. First, plaintiff cannot establish that another employee of similar qualifications who was not a member of a protected group was promoted. Cyrus Bode's initial selection for the supply clerk position was Andrea Renee Gregory, a black woman. Plaintiff cannot establish that discrimination occurred if the person selected to fill the position is also a member of a protected group. *Bell*, 708 F.2d at 1316. The fact that Ms. Gregory did not ultimately fill the position does not change the conclusion that defendant did not discriminate in its initial selection of an employee from the competitive register. It was only after Bode learned that Gregory could not fill the position that he chose Jean Trende. Significantly, plaintiff would not even have been Bode's first three choices from the competitive register list.

Plaintiff's prima facie case also fails in another respect. It is true that Jean Trende, a white woman, was ultimately selected to fill the position of supply clerk when it became apparent that Ms. Gregory would be unable to fill the position. Plaintiff, however, is unable to make a prima facie case because plaintiff must establish that the defendant treated her less favorably than a similarly situated non-minority employee. *Johnson*, 813 F.2d at 896. Jean Trende and Deborah Lacey, however, were not similarly situated. Jean Trende was a

GS–5 employee who was entitled to apply for the position of supply clerk through a noncompetitive lateral transfer procedure. It was not a promotion for Jean Trende. Plaintiff, however, as a GS–4 employee, could only apply for the position as a promotion through a competitive register. Deborah Lacey was similarly situated with the other thirteen employees selected for the competitive register. She was not similarly situated with Jean Trende. As such, plaintiff cannot establish a prima facie case of intentional discrimination.

Assuming plaintiff could in fact establish a prima facie case of intentional discrimination, the burden would shift to defendant to dispel this inference by articulating a legitimate non-discriminatory reason for its action. In this case defendant has clearly done so. The evidence shows that at the time Cyrus Bode selected Ms. Gregory for the position of supply clerk there was a hiring restriction in effect. Thus, it could take several months before Ms. Gregory would be approved for the position. While Bode was awaiting the approval of Gregory, he learned that Ms. Gregory had accepted another job. He then had the option to instigate another competitive register, but this process would possibly take another month, and the work of a supply clerk was piling up. Instead, he believed it would be a better business decision to hire Jean Trende, as a lateral, who was qualified through personnel, and had the necessary qualifications and experience. Further, Trende would not require approval from the Personnel Review Board, as Ms. Gregory had required, because Trende was already within the command. Thus, Mr. Bode decided to hire Ms. Trende for the open position. The Court concludes that defendant has clearly articulated a legitimate non-discriminatory reason for its actions in hiring Jean Trende.

After defendant rebutted plaintiff's prima facie case, plaintiff then had to show that the articulated reason was merely a pretext for illicit discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The Court finds that plaintiff has entirely failed to introduce any evidence at all, either directly or indirectly, that would suggest that defendant's reasons for hiring Ms. Trende over plaintiff was a pretext for discrimination.

Accordingly, the Court finds that defendant did not intentionally discriminate against plaintiff when it chose not to select plaintiff for the supply clerk position. Judgment will be entered accordingly.

JUDGMENT

IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment is entered in favor of defendant and against plaintiff in accordance with the accompanying memorandum.